**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 28 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

# UNITED STATES COURT OF APPEALS
# TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

CLARENCE LEE GREEN,
ERIK LAMONT BROWNE,
ERIC BLY,

    Defendants-Appellants,

No. 97-6045
No. 97-6046
No. 97-6047

---

Appeal from the United States District Court
for the W.D.District of Oklahoma
(D.C. No. CR-96-108-A)

---

David W. Lee, Lee & Gooch, P.C., Oklahoma City, Oklahoma, for Erik Lamont Browne, Defendant-Appellant.

Teresa Brown, Assistant Federal Public Defender, Oklahoma City, Oklahoma, for Eric William Bly, Defendant-Appellant.

Michael G. Katz, Federal Public Defender, and James P. Moran, Assistant Federal Public Defender, Denver, Colorado, submitted a brief for Clarence Lee Green, Defendant-Appellant.[1]

---

[1] Case No. 97-6045, *United States v. Clarence Lee Green*, was submitted on the briefs. The other two cases were orally argued.

Leslie M. Maye, Assistant United States Attorney (Patrick M. Ryan, United States Attorney, with her on the brief), Oklahoma City, Oklahoma, for United States of America, Plaintiff-Appellee.

---

Before **SEYMOUR**, Chief Judge, **BARRETT** and **TACHA**, Circuit Judges.

---

**SEYMOUR**, Chief Judge.

Clarence Lee Green, Erik Browne, Eric Bly, and numerous other individuals were charged in a 97 count indictment arising out of a conspiracy to distribute cocaine base (crack). The charges included conspiracy to possess with intent to distribute powder cocaine and crack cocaine; possession with intent to distribute and the distribution of crack cocaine; use of telephones and wire transfers in facilitating the conspiracy; maintaining a place to manufacture or distribute crack cocaine; money laundering; and felon in possession of a firearm. Of the eighteen individuals charged, only Mr. Green, Mr. Bly, and Mr. Browne declined to plead guilty. A jury convicted the three men on most counts. Mr. Green and Mr. Bly were sentenced to life imprisonment, and Mr. Browne to 324 months imprisonment.

Mr. Green appeals on three grounds: 1) the affidavit on which the wiretap order rested contained false statements and material omissions and should therefore be invalidated; 2) the trial court erred in admitting the tapes resulting from the wiretap order as the prosecution did not lay a sufficient foundation; and 3) the district court erred in admitting evidence that Mr. Green had threatened a co-conspirator at gunpoint. We affirm Mr. Green's conviction.

Mr. Bly appeals on four grounds: 1) the district court erred in admitting into evidence one kilogram of cocaine which was irrelevant and highly prejudicial; 2) the evidence was insufficient to support Mr. Bly's conviction on

several of the counts; 3) the district court erred in enhancing his sentence for a leadership role under the Sentencing Guildelines; and 4) the district court erred in enhancing his sentence based on two prior drug convictions under 21 U.S.C. §§ 841(b)(1)(A) & 851.  We affirm in part and vacate and remand in part.

Mr. Browne asserts one ground for appeal:  the district court erred in calculating the amount of drugs for which he should be accountable.  We agree and remand for resentencing.

**I.**

**FACTS**

We recite the relevant facts in the light most favorable to the government since the jury convicted defendants.  *See United States v. Duran*, 131 F.3d 1324, 1326 n.1 (10th Cir. 1998).  From October 1994 to July 1995, members of the Main Street Mafia Crips (MSMC) traveled between southern California and Oklahoma City in order to transport and distribute crack cocaine in Oklahoma City.  MSMC members would transport the cocaine in powder form, and Richard Phillips, the leader of the Oklahoma City drug distribution conspiracy, would "cook" the cocaine to manufacture crack cocaine.  MSMC members would distribute the crack in an area of abandoned houses referred to as "the Trenches" or at the Drover Inn in Oklahoma City.

Numerous individuals were involved with the conspiracy. Richard Phillips, also known as "Richie Rich," obtained large quantities of cocaine from various sources in Los Angeles, frequently transported it, distributed quantities of crack cocaine to more junior individuals who would then deal it, and received and guarded the proceeds of drug sales. He made most decisions jointly with defendant Clarence Lee Green, who served as the second-in-charge of the organization. Mr. Green, also known as EJ, was in charge when Mr. Phillips was not in Oklahoma City. When neither Mr. Green nor Mr. Phillips was present in Oklahoma City, primary responsibility for the drug operation fell to Eric Bly, who was commonly referred to as "El." Other individuals, like Pete Monroe, played key roles in establishing and maintaining the MSMC operations in Oklahoma City. Several individuals, including Mr. Bly, and for a shorter while Erik Browne, would actually sell the drugs to users of crack cocaine. Mr. Browne was frequently called "Light."

When MSMC members first started operating in Oklahoma City they stayed in a hotel, but Mr. Phillips and Mr. Green soon decided to rent a home. The group rented a home located at 2436 Southwest 46th Street, in which Mr. Green, Mr. Bly, and Mr. Phillips were all assigned bedrooms. Soon thereafter Mr. Bly met and became romantically involved with Consuelo Carbajal, subsequently staying at her residence.

The FBI applied for wiretap authorization to further its investigation of the MSMC drug conspiracy. It first received authorization in April 1995 in Los Angeles; two months later it applied for and received authorization in Oklahoma City to wiretap the rented home on Southwest 46th Street as well as Consuelo Carbajal's residence. The FBI obtained significant information about the MSMC's drug operations through these wiretaps.

The operations of the conspiracy changed as necessary. For example, Mr. Phillips was arrested with one kilogram of cocaine in an Ontario, California, airport, and MSMC members in Oklahoma City adjusted accordingly. Drug operations continued through July 1995, and the organization handled over fifteen kilograms during the course of the conspiracy.

## II.

## CLARENCE LEE GREEN

### A. Material Omissions from the Wiretap Affidavit

Mr. Green first asserts that the Oklahoma City affidavit and application for wiretap authorization, albeit facially sufficient, was fraught with misrepresentations and material omissions. He contends that had the affidavit been accurate, it would not have met the statutorily mandated "necessity

requirement," and therefore the district court should have suppressed the resultant tapes.

The federal wiretap statute, Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended, governs electronic eavesdropping by law enforcement. *See* 18 U.S.C. §§ 2510-22. It sets up special procedures for obtaining wiretap authorization, including presenting a written application to a judge. A judge may only grant such authorization if the application meets the necessity requirement by showing that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous to try." 18 U.S.C. § 2518 (3)(c). The purpose of this requirement "is to ensure that the relatively intrusive device of wiretapping 'is not resorted to in situations where traditional investigative techniques would suffice to expose the crime.'" *United States v. Edwards*, 69 F.3d 419, 429 (10th Cir. 1995) (quoting *United States v. Kahn*, 415 U.S. 143, 153 n.12 (1974)). If an application was granted without meeting the necessity requirement, the wiretap evidence must be suppressed. *See Castillo-Garcia*, 117 F.3d at 1185.

The application and affidavit for wiretap authorization are subject to the requirements of *Franks v. Delaware*, 438 U.S. 152 (1978), and its progeny. *See United States v. Lucht*, 18 F.3d 541, 546 (8th Cir. 1994); *United States v. Ippolito*, 774 F.2d 1482, 1484-85 (9th Cir. 1985). In *Franks*, the Supreme Court held that

a criminal defendant may challenge a facially sufficient affidavit for a search warrant on the ground that the police knowingly, intentionally or recklessly included false information. 438 U.S. at 155-56. We have extended the holding of *Franks* to material omissions. *See United States v. Kennedy*, 131 F.3d 1371, 1375 (10th Cir. 1997); *Stewart v. Donges*, 915 F.2d 572, 582 (10th Cir. 1990). If a wiretap affidavit omits material information that would vitiate either the necessity or the probable cause requirements had it been included, the resultant evidence must be suppressed. *Cf. Stewart*, 915 F.3d at 582-83 & n.13.

However, a district court's wiretap authorization "is presumed proper, and the defendant bears the burden of overcoming this presumption." *United States v. Killingsworth*, 117 F.3d 1159, 1163 (10th Cir. 1997). We review the district court's factual findings for clear error and its legal rulings de novo. *See United States v. Castillo-Garcia*, 117 F.3d 1179, 1186 (10th Cir. 1997).

Before considering issues of materiality and recklessness with respect to the affidavit at issue here, we must first assess whether the affidavit suffered from omissions. On appeal, Mr. Green contends that Agent Burns recklessly failed to mention that Kevin Robinson and Mr. Phillips,[2] key members of the MSMC, were

---

[2] Mr. Green argued below that Agent Burns omitted the fact of Mr. Robinson's cooperation from his affidavit. Mr. Green did not raise the issue of Mr. Phillips' cooperation during the duration of the Oklahoma City wiretap. Moreover, the evidence Mr. Green cites to support this proposition actually indicates that Mr. Phillips was *not* cooperating during the summer of 1995. *See*

cooperating witnesses. He asserts that if the district court had known of such high-level cooperation, it could not have found that a wiretap was necessary.

The district court found after a hearing that Agent Burns was honest in his affidavit. Specifically, the court found that Mr. Robinson entered into a plea agreement in January 1995 in a case unrelated to this one. When Agent Burns filed his affidavit on June 16, 1995, he had no knowledge of Mr. Robinson's existence. He learned of "K-dog" (Mr. Robinson) sometime later, and K-dog provided some information about the drug conspiracy to law enforcement officials. They found Mr. Robinson unreliable and therefore did not consider him a cooperating witness. Indeed, he became a target of the investigation. When the government filed for an extension of the wiretap authorization on July 14, 1995, it mentioned that an unnamed witness had provided limited assistance, but not enough to prove the case. Agent Burns later testified that the witness was Kevin Robinson. *See* Rec., vol. V, at 402-03. Well after the wiretap was completed, Mr. Robinson helped identify voices on the tapes. The above findings are adequately supported by the record. Given the district court's determination that Agent Burns did not know of Mr. Robinson's existence on June 16, 1995, and that Mr. Robinson did not act as a cooperating witness, we cannot say the wiretap

---

Rec., vol. VI, at 626-27. The government's failure to describe Mr. Phillips as a cooperating witness in its wiretap application clearly does not constitute an omission, material or otherwise.

application contained omissions.

This case is clearly distinguishable from *United States v. Ippolito*, 774 F.2d 1482 (9th Cir. 1985), relied on by Mr. Green. In *Ippolito*, a confidential informant stated in a wiretap affidavit that he was unwilling to testify against the targets of an investigation because he feared retaliation. *Id.* at 1483. It was later revealed that a law enforcement agent instructed the confidential informant to so state so that the government could demonstrate the necessity of a wiretap. *Id.* at 1484. In truth, the informant was willing not only to testify but also to have his conversations monitored and to infiltrate the conspiracy. *Id.* The district court found the government had made intentionally false, reckless, or misleading statements. Here, the district court's factual findings are contrary to those in *Ippolito*. Mr. Green has not shown that Agent Burns recklessly omitted material information from the wiretap application.

B.    **Sufficiency of the Foundation for the Tapes**

Mr. Green next contends the government did not lay a sufficient foundation for the admission of the tapes of wiretaps in Oklahoma City and Los Angeles. We review for abuse of discretion the trial court's decision to admit the tapes. *See United States v. Smith*, 692 F.2d 693, 698 (10th Cir. 1982).

This circuit has adopted a flexible approach in determining whether the prosecution laid a sufficient foundation for the admission of wiretap recordings. *See United States v. Jones*, 730 F.3d 593, 597 (10th Cir. 1984). While numerous factors may guide our consideration,[3] no single factor or set of factors is dispositive. *See id.* Rather, the paramount purpose of laying a foundation is to ensure the accuracy of the evidence in question. *See Smith*, 692 F.2d at 698. Indeed, "we will not upset the judge's admission of a recording unless the foundation was clearly insufficient to insure the accuracy of the recording." *Jones*, 730 F.2d at 597; *see also United States v. Davis*, 929 F.2d 554, 558 (10th Cir. 1991). We consider each set of tapes in turn.

### 1. *Oklahoma City*

The government offered two witnesses, William Terhune of the Oklahoma

---

[3] The frequently cited case of *United States v. McKeever*, 169 F. Supp. 426 (S.D.N.Y. 1958) set forth seven factors necessary for the introduction of a sound recording: (1) the recording device was capable of taking in the conversation now offered into evidence; (2) the operator of the device was competent to do so; (3) the recording is authentic and correct; (4) changes, additions or deletions have not been made in the recording; (5) the recording has been preserved; (6) the speakers are identified; and (7) the conversation was elicited voluntarily and in good faith, without any kind of inducement. *Id.* at 430. While we recognize these factors may assist judges ruling on foundation questions, they are not prerequisites to the admission of sound recordings in this circuit. *See United States v. Jones*, 730 F.2d 593, 597 (10th Cir. 1984); *United v. Smith*, 692 F.2d 693, 698 (10th Cir. 1982).

City Police Department (OCPD) and Agent Dylan Burns of the FBI, to establish a foundation for the recordings from the Oklahoma City wiretaps. Mr. Terhune, a 23-year veteran of the OCPD, served as the tech room supervisor for the Oklahoma City wiretaps. In that capacity, he installed the equipment necessary for the wiretap, was responsible for its proper operation, supervised the monitors and periodically monitored conversations himself, and reviewed tapes relevant to the MSMC investigation. He testified about the training and education he and others monitoring the tapes received, as well as the technical working of the recording equipment. Agent Burns testified about voice identification, editing, and the content of the tapes the government sought to admit. He also discussed his compliance with the statutory sealing requirements. In light of this testimony, the district court found that a foundation "has been more than adequately laid." Rec., vol. V, at 383.

Mr. Green cites examples of other witnesses, like each tape monitor, who could have testified as to the authenticity of the tapes. While such testimony would have strengthened the government's case, it certainly was not necessary to insure the accuracy of the recordings. *Cf. Jones*, 730 F.2d at 597. We affirm the district court's admission of the Oklahoma City wiretap evidence.

### 3. Los Angeles

The government used Special Agent Tim Bradley of the FBI to lay a foundation for the three tapes recorded from the Los Angeles wiretap. Agent Bradley explained the FBI's routine procedures for obtaining and handling wiretap evidence and testified about voice identification and the content of various calls. He did not serve in a technical position, but he did answer several basic questions on minimization of calls unrelated to the conspiracy.

Agent Bradley's testimony was not as comprehensive as the combined testimony of Mr. Terhune and Agent Burns. We would have less pause admitting the tapes had a technically qualified witness also testified. Nevertheless, Mr. Green has not overcome the presumption of regularity Agent Bradley's testimony raises. We will not exclude wiretap evidence "merely because one can conjure up hypothetical possibilities that tampering occurred." *United States v. Cortellesso*, 663 F.2d 361, 364 (1st Cir. 1981). We uphold the admission of this wiretap evidence.

## C.    Evidence of Threatening a Co-Conspirator at Gunpoint

Mr. Green also claims the district court improperly admitted Rule 404(b) evidence that he threatened a co-conspirator with a gun in order to collect missing drug profits. We review the admission of this evidence for an abuse of discretion.

*See United States v. O'Brien*, 131 F.3d 1428, 1432 (10th Cir. 1997).

Federal Rule of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," but may be admitted for a proper purpose if reasonable notice is given. "'Rule 404(b) only applies to evidence of acts extrinsic to the crime charged.'" *United States v. Lambert*, 995 F.2d 1006, 1007 (10th Cir. 1993) (quoting *United States v. Pace*, 981 F.2d 1123, 1135 (10th Cir. 1992)). Direct or intrinsic evidence of the crime charged does not fall within the ambit of the rule. *See id.* In a conspiracy case, "[a]cts committed in furtherance of the charged conspiracy are themselves part of the act charged." *United States v. Garcia Abrego*, 141 F.3d 142, 175 (5th Cir. 1998). Evidence of such acts is therefore intrinsic and simply does not implicate the requirements of 404(b). *See id.*; *United States v. Badru*, 97 F.3d 1471, 1475 (D.C. Cir. 1996) (quoting 22 CHARLES A. WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE § 5239, at 450 (1978) ("In cases where the incident offered is a part of the conspiracy alleged in the indictment, the evidence is admissible under Rule 404(b) . . . as direct evidence of the fact in issue, not as circumstantial evidence requiring an inference as to the character of the accused."); *United States v. Sasser*, 971 F.2d 470, 479 (10th Cir. 1992) (affirming that direct evidence of the charged conspiracy was not 404(b) evidence and therefore did not require a

limiting instruction on evidence of "other acts").

Here, the prosecution introduced evidence that Mr. Green and others threatened former MSMC member Akale Green at gunpoint because they suspected he had stolen drug proceeds. They directed him to strip to his underwear in order to ascertain whether he had any hidden cash on him. Although Mr. Phillips discussed killing him, the group let him go unharmed after collecting whatever money he had on him. The district court allowed Akale Green's testimony of this event as "intrinsic evidence that goes to the implementation of the conspiratorial purpose." Rec., vol. X, at 946. We agree that this evidence of Mr. Green's attempt to collect missing profits from the MSMC drug distribution activities is intrinsic to the conspiracy charged and consequently does not implicate Rule 404(b). We therefore affirm Mr. Green's conviction.

## III.

## ERIC BLY

### A. Sufficiency of the Evidence

Mr. Bly first contends the evidence was insufficient to convict him of conspiracy, possession with intent to distribute, or maintaining a place to

manufacture or distribute cocaine base.  In assessing these claims, we review "the entire record de novo in the light most favorable to the government to determine whether a reasonable jury could find guilt beyond a reasonable doubt, based on the direct and circumstantial evidence, together with the reasonable inferences to be drawn therefrom." *United States v. Smith*, 133 F.3d 737, 741-42 (10th Cir. 1997).  The evidence "must be substantial, raising more than a mere suspicion of guilt." *Id.* at 742.  We consider each offense in turn.

### *1. Conspiracy*

The jury convicted Mr. Bly on Count 1, conspiracy to possess with the intent to distribute and to distribute cocaine in violation of 21 U.S.C. § 846.  In order to prove this count, the government had to establish that Mr. Bly "agreed to violate the law, that [he] knew at least the essential objectives of the conspiracy, and that he knowingly and voluntarily became part of the conspiracy." *United States v. Williams*, 923 F.2d 1397, 1402 (10th Cir. 1990).  The government need not prove Mr. Bly expressly agreed to distribute cocaine; "[a] tacit agreement is sufficient." *United States v. Hartsfield*, 976 F.2d 1349, 1354 (10th Cir. 1992). "[T]he jury may presume that a defendant is a knowing participant in the conspiracy when he acts in furtherance of the objectives of the conspiracy." *United States v. Brown*, 943 F.2d 1246, 1250 (10th Cir. 1991).

The government presented substantial evidence the Mr. Bly was an integral part of this conspiracy. Witnesses testified that he, inter alia, cut up the rocks of crack cocaine for distribution, dealt drugs in the Trenches and the Drover Inn, taught others to do so, took primary responsibility for drug operations when Mr. Phillips and Mr. Green were not in Oklahoma City, and handled weapons. Even without the direct testimony that Mr. Bly expressly agreed to distribute crack cocaine, one can easily infer from his actions that Mr. Bly tacitly agreed to participate in and further the objectives of this conspiracy. We affirm his conviction on this count.

### 2. *Possession with Intent to Distribute*

The jury convicted Mr. Bly of seven counts of possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a). To prove each count, the government had to establish Mr. Bly "knowingly possessed cocaine and intended to distribute it." *United States v. Brown*, 995 F.2d 1493, 1503 (10th Cir. 1993). Extensive evidence indicated that Mr. Bly knowingly possessed crack cocaine and distributed it at the Drover Inn and the Trenches. We affirm his convictions on these counts.

### *3. Maintaining a Place*

The jury convicted Mr. Bly of Count 7 which charged he maintained a place, 2436 Southwest 46th Street, to manufacture or distribute crack cocaine in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2, which covers aiding and abetting. To prove the maintaining charge, the government must establish that the defendant "1) knowingly 2) opened or maintained a place 3) for the purpose of manufacturing by repackaging, distributing, or using any controlled substance." *Williams*, 923 F.2d at 1403; *see also United States v. Verners*, 53 F.3d 291, 295-96 (10th Cir. 1995). "The essence of aiding and abetting liability is proof the defendant willfully associated with a criminal venture and sought through some affirmative action to make that venture succeed." *United States v. Torres*, 53 F.3d 1129, 1135 (10th Cir. 1995); *see also United States v. Sarracino*, 131 F.3d 943, 946 (10th Cir. 1997). Section 2 provides that aiders and abettors are liable as principals. 18 U.S.C. §2(a).

A reasonable juror could infer from the evidence that, at a minimum, Mr. Bly aided and abetted in maintaining a crack house. Substantial evidence showed that the manufacture and distribution of drugs was "at least one of the primary or principal uses to which the house [was] put," *Verners*, 53 F.3d at 296, and Mr. Bly knew it. In addition, he gave his drug proceeds to Mr. Phillips knowing the money would be used in part to pay the rent and other bills, and generally to

-18-

maintain the premises.  Given this evidence, we affirm Mr. Bly's conviction on this count as well.

**B.     Evidence of One Kilogram of Cocaine**

Mr. Bly contends the district court erred in allowing Mr. Phillips' testimony that he was arrested in Ontario with one kilogram of cocaine, and in  admitting the actual kilogram of cocaine into evidence.   He asserts such evidence was irrelevant because Mr. Phillips testified that the kilogram at issue was not intended for Mr. Bly or any of the other defendants.  He also claims the evidence was inadmissible under Federal Rules of Evidence 403 and 404(b).  We review the admission of evidence for an abuse of discretion.  *United States v. Wittgenstein*, 163 F.3d 1164, 1172 (10th Cir. 1998).  "However, even if the trial court erroneously admits evidence, such error does not require reversal if it was harmless."  *Id.*  "An erroneous admission of evidence is harmless unless it had a 'substantial influence' on the outcome or leaves one in 'grave doubt' as to whether it had such an effect."  *United States v. Bornfield*, 145 F.3d 1123, 1131 (10th Cir. 1998).

At trial, substantial evidence linked Mr. Bly to many other kilograms of cocaine.  Given the strength of the government's case against Mr. Bly, we are not persuaded that this particular piece of evidence substantially influenced the jury's

verdict. *See United States v. Viefhaus*, No. 97-5207, 1999 WL 71597 at *5 (10th Cir. Feb. 16, 1999).

**C.  Sentencing Enhancement for Leadership Role**

Mr. Bly contends he did not have a leadership role in the MSMC drug operations and the district court therefore erred in enhancing his sentence on that ground. We uphold the district court's factual findings unless clearly erroneous and review de novo questions of law regarding the application of the sentencing guidelines. *See United States v. Cantley*, 130 F.3d 1371, 1379 (10th Cir. 1997).

Section 3B1.1(b) provides a three level increase in the base offense level "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants." U.S.S.G. § 3B1.1 (b) (1998). "To qualify for an adjustment under this section, the defendant must have been the . . . manager, or supervisor of one or more other participants." U.S.S.G. § 3B1.1 comment. at n.2. In determining whether this section applies to a defendant, the court should consider

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1 comment. at n.4.

In enhancing Mr. Bly's sentence, the district court found that

> although he wasn't an organizer or leader, Mr. Bly was a manager because he did at times perform the function of gatekeeper to the money; he did at times perform the function of distributing the crack cocaine for further distribution; he did at times inform others as to what steps they should take for transmission of the money back to California.

Rec., vol. XVII, at 1954-55. The court also found that Mr. Bly supervised Mr. Browne, Jerome [sic] Hawkins,[4] and Ms. Carbajal. The evidence at trial supports these findings. The district court did not err in enhancing Mr. Bly's sentence under Section 3B1.1 (b).

**D.    Sentencing Enhancement for Prior Drug-Related Convictions**

Mr. Bly also contends the government failed to establish beyond a reasonable doubt, as required by 21 U.S.C. § 851, that he was previously convicted of two drug-related felonies, and the district court therefore erred in enhancing his sentence to life imprisonment.[5] Section 851(a)(1) provides that

---

[4] It appears the court misspoke and was actually referring to Jermaine Hawkins.

[5] The court apparently enhanced Mr. Bly's sentence to mandatory life under 21 U.S.C. § 841 (b)(1)(A), which provides "[i]f any person commits a violation of this subparagraph or of section 849, 859, 860, or 861 of this title after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment." As discussed *infra*, both parties and the court acted pursuant to the procedures in 21 U.S.C. § 851, which control sentence enhancement under § 841(b)(1)(A), although neither the government's information nor the sentencing report stated

"[n]o person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions" unless prior to trial the United States attorney notifies the court and the defendant which prior convictions it will rely upon. If the defendant files a written response "den[ying] any allegation of the information of prior conviction, or claim[ing] that any conviction alleged is invalid," the court shall hold a hearing on the issues the defendant raises. 21 U.S.C. § 851(c)(1). At such a hearing, "the United States attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact." *Id.*

We review de novo the legal question of whether a rational trier of fact could find the evidence was sufficient beyond a reasonable doubt, viewing the evidence and all reasonable inferences therefrom in the light most favorable to the government.[6] *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The United

which statutory provision allowed for the enhancement. We note that the government's burden under section 851, proof beyond a reasonable doubt, and the standard of review under the statute differ from those under the Sentencing Guidelines.

Mr. Bly's pre-sentence report (PSR) also listed prior drug-related offenses and advised that the appropriate sentence was life imprisonment under the Sentencing Guidelines. Mr. Bly objected to those findings. However, since the life sentences were imposed pursuant to § 841(b)(1)(A), we do not consider whether Mr. Bly's alleged prior convictions could be used to enhance his sentence under the Guidelines.

[6] The government treats this claim as an appeal of a sentence enhancement under the Armed Career Criminal Act (ACCA). *See* Aplee. Br. at 42. However, the ACCA, 18 U.S.C. § 924 (e), applies only to individuals who violate § 922 (g),

States Supreme Court has defined "reasonable doubt" as "a doubt that would cause a reasonable person to hesitate to act," *Victor v. Nebraska*, 511 U.S. 1, 20 (1994), and explained that in order to convict on this standard, the fact finder should have "an abiding conviction as to guilt," *id.* at 14; *see also id.* at 21. The Federal Judicial Center's pattern criminal jury instructions state that "[p]roof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt." FEDERAL JUDICIAL CENTER, PATTERN CRIMINAL JURY INSTRUCTIONS 28-29 (1988) (Instruction 21). The phrase "reasonable doubt" and definitions thereof are intended to convey "the very high level of probability [of guilt] required by the Constitution in criminal cases." *Victor*, 511 U.S. at 14. We use this standard to assess whether the evidence supports beyond a reasonable doubt that Mr. Bly was previously convicted of two drug-related felonies.

On September 16, 1996, the government filed a motion under 21 U.S.C.

which prohibits felons from possessing firearms, and "ha[ve] three previous convictions . . . for a violent felony or serious drug offense." 18 U.S.C. § 924 (e); *see also* 18 U.S.C. § 922 (g); U.S.S.G. § 4B1.4 & comment. n.1 (setting forth sentencing procedures for those subject to an enhanced sentence under § 924 (e)); *United States v. Green*, 55 F.3d 1513, 1515 (10th Cir. 1995). The statute defines "serious drug offense" as one in which the maximum term of imprisonment is ten years or more. *See* 18 U.S.C. § 924 (e)(2)(A). The district court found Mr. Bly had been convicted of two, not three, previous drug offenses and did not specify what the statutory maximum was for those offenses. Indeed, the court made no mention of the ACCA in sentencing Mr. Bly, indicating that statute had no bearing on his sentence. The government's reliance on cases under the ACCA is wholly misplaced.

§ 851(a)(1) to give notice that Mr. Bly had two prior felony drug convictions: No. A62770, possession for sale of phencyclidine, and No. FSB 266449 CR 47752, possession for sale of a controlled substance, cocaine; and that the penalty for all relevant counts was a mandatory term of life imprisonment. The convictions were not in Mr. Bly's name – the former belonged to Eric Daniels, the latter to Derrick Taylors. Mr. Bly responded in writing to the motion, claiming that he was not convicted of either drug-related felony, and that No. A62770 was presumptively invalid because, even assuming the defendant was Mr. Bly, the crime and conviction occurred when he was a juvenile.[7] After allowing both sides to present evidence during Mr. Bly's sentencing hearing, the district court found the government had established Mr. Bly's identity beyond a reasonable doubt, and that No. A62770 was a valid conviction. The court then sentenced Mr. Bly to mandatory life imprisonment. We consider each conviction in turn.

---

[7] A defendant may not challenge the validity of a conviction "which occurred more than five years before the date of the information alleging such prior conviction." § 851(e). Mr. Bly claims that even if he were the defendant in Case No. A62770, the conviction would be presumptively invalid because he was a juvenile at the time of the crime and the conviction. The defendant in that case pled guilty on September 21, 1987, more than five years before the government filed its § 851 information in this case. Under the plain language of 21 U.S.C. § 851(e), therefore, Mr. Bly cannot challenge the validity of this conviction.

-24-

## 1. No. A62770

The district court relied on three factors in determining that No. A62770 represented a conviction of Mr. Bly notwithstanding it was in the name Eric Daniels. First, Mr. Bly's PSR listed "Eric Daniels" as one of his aliases, an assertion to which Mr. Bly did not object. California authorities also had Eric Daniels listed as an a/k/a for Mr. Bly. Second, evidence showed the two were born on the same date, March 12, but in different years. And finally, the only difference in the two men's addresses was that Mr. Bly lived on West 107th Street, whereas Mr. Daniels lived on East 107th Street. The district court found this evidence sufficient to prove beyond a reasonable doubt that the two men were one.

We disagree. First, even the district court acknowledged that aliases can be "faddish," rec., vol XVII, at 1914, with multiple individuals using the same name. The government's witness also recognized that gang members often have similar aliases. Indeed, two of the defendants in this case went by similar aliases – Clarence Lee Green's alias was EJ, and Jermaine Hawkins went by "tiny EJ." Second, while the two pieces of vital information are similar, notable discrepancies exist. Third, the government introduced no physical evidence that the two men were the same. It offered no photographs or fingerprints, although a

government witness admitted that it could obtain those items quite easily.[8]

Given these infirmities in the proof against Mr. Bly, we hold that no rational trier of fact could have an "abiding conviction," *Victor*, 511 at 21, that Mr. Bly was convicted of this crime in Mr. Daniels' name. This bare evidence may be sufficient for a rational trier of fact to so find under a preponderance of the evidence standard, but that is not the issue here. *Cf. In re Winship*, 397 U.S. 358, 367 (rejecting the contention that there is "'tenuous difference' between the reasonable doubt and the preponderance standards."). The evidence is insufficient to establish beyond a reasonable doubt that this was Mr. Bly's conviction.

### 2. No. FSB266449, CR 47752

A Derrick Taylors pled guilty to this offense on August 18, 1988, in San Bernadino County Superior Court. The district court relied on three facts in determining that Mr. Bly was Mr. Taylors for the purpose of this conviction. First, Mr. Bly did not object to his PSR listing Derrick Taylors as one of his aliases. Second, both Mr. Taylors and Mr. Bly used the alias "El." Third, the

---

[8] At oral argument, the government explained that it did not offer photographs or fingerprints because Mr. Bly did not object to the aliases listed in the PSR. Admitting to an alias, however, is not the same as admitting to a prior conviction, and Mr. Bly consistently denied he was in fact convicted of the crimes at issue.

court noted that there was specific evidence that Mr. Bly had been convicted of a crime at about this time in the state of California. The district court found these three facts together established beyond a reasonable doubt that Mr. Bly was convicted of this crime.[9]

Again, we must disagree. As noted above, the government and district court acknowledged that aliases can be faddish, especially among gang members. We recognize that Mr. Bly stipulated to a prior felony conviction at trial, and others testified that he came to Oklahoma to avoid a parole violators warrant in California. However, Mr. Bly's PSR indicates he was convicted of several crimes in the late 1980s in California, and we have found nothing in the record to indicate his stipulated conviction is this one. Mr. Bly was by no means unique in having a criminal conviction from California. In addition, the government failed to introduce fingerprints. Significantly, the government did introduce a faxed photograph of Mr. Taylors; however, at sentencing the government's own witness, Mr. Tillman, could not identify Mr. Bly as the person pictured in that photograph. The district court found "no need" for the actual photographs or fingerprints of

---

[9] Several other pieces of information not mentioned by the district court allegedly linked Mr. Bly to Mr. Taylors. First, Mr. Taylors and Mr. Bly were born on the same date, March 12, but in different years, 1968 and 1970 respectively. Second, both mens' mothers' first name was Nadine, but they have different last names. Third, apparently both men had similar tatoos. However, the government's witness admitted that gang members often have the same or similar tatoos.

Mr. Taylors, as it had decided the government had met its burden without them. We are not so persuaded. The evidence relied on by the district court created at most a tenuous link between Mr. Bly and Mr. Taylors. That "link" was sharply undercut by the government's own witness, who was unable to match Mr. Bly to the faxed photograph. That photograph was the only physical evidence the government introduced in its attempt to link Mr.Bly to this conviction, and it did just the opposite. Given the lack of concrete evidence linking Mr. Bly to Mr. Taylors, and Mr. Tillman's inability to match the picture of Mr. Taylors with Mr.Bly, we hold that no rational trier of fact could be "firmly convinced," *Victor*, 511 U.S. at 27 (Ginsburg, J., concurring), this was a conviction of Mr. Bly.

Because the government failed to meet its statutorily mandated burden to establish beyond a reasonable doubt prior convictions for two drug-related felonies, we vacate Mr. Bly's sentence and remand for resentencing de novo on this issue. "[D]e novo resentencing permits the receipt of any relevant evidence the court could have heard at the first sentencing hearing." *United States v. Ortiz*, 25 F.3d 934, 935 (10th Cir. 1994).

## IV.

## ERIK BROWNE

Mr. Browne asserts the district court incorrectly calculated the amount of drugs for which he should be held accountable and his sentence should be reduced accordingly. Mr. Browne contends the court made several errors: 1) it should not have included the one kilogram seized from Mr. Phillips at the Ontario airport in calculating Mr. Browne's sentence; 2) it should have treated the one kilogram as powder cocaine, not cocaine base; and 3) it failed to make any findings linking Mr. Browne to the half kilogram of cocaine on June 23, 1995. The government has the burden of establishing by a preponderance of the evidence the quantity of drugs for which the defendant is responsible. *United States v. Richards*, 27 F.3d 465, 468 (10th Cir. 1994). We review the district court's calculation as a finding of fact which we will uphold unless clearly erroneous. *Id.*

Mr. Browne first argues the district court erred in holding him accountable for the kilogram seized from Mr. Phillips. Section 1B1.3 of the Sentencing Guidelines provides that a defendant's base level offense will be based in part on relevant conduct, which goes beyond simply the conduct for which the defendant was convicted. This provision provides that, in the case of a conspiracy, a defendant is accountable for the conduct of others that is within the scope of his agreement and reasonably foreseeable by him. *See* U.S.S.G. § 1B1.3 comment.

n.2; *United States v. Johnston*, 146 F.3d 785, 795 (10th Cir. 1998); *United States v. Melton*, 131 F.3d 1400, 1404 (10th Cir. 1997). "[T]he 'scope of the agreement' and 'reasonable foreseeability' are independent and necessary elements of relevant conduct under § 1B1.3(a)(1)(B)." *United States v. Carreon*, 11 F.3d 1252, 1253 (5th Cir. 1994). "[T]he scope of the criminal activity jointly undertaken by the defendant . . . is not necessarily the same as the scope of the entire conspiracy." U.S.S.G. § 1B1.3 comment. n.2; *see also Melton*, 131 F.3d at 1403. Therefore, at sentencing the district court must make particularized findings tying the defendant to the relevant conduct used to increase the base level offense. *See Melton*, 131 F.3d at 1404.

In determining that Mr. Phillips' kilogram of cocaine should be included in calculating Mr. Browne's base level offense, the district found "as the defendant [had been] active in the conspiracy, and [had been] involved in distribution . . . he had conspiratorial responsibility." Rec., vol. XXI, at 21. The court did not elaborate on the scope of Mr. Browne's agreement or whether Mr. Phillips' actions were reasonably foreseeable. In fact, the court acknowledged Mr. Phillips' testimony that this kilogram of cocaine was intended for Mr. Robinson and that the three defendants at trial were not involved with the transaction, but then generally stated that the cocaine was to be distributed through the conspiracy. That is not sufficient. The district court must make particularized

-30-

findings which are supported in the record about the scope of Mr. Browne's agreement to be a part of the MSMC drug operations and about whether this kilogram of cocaine was reasonably foreseeable to him. Accordingly, we remand the case for further factual findings. *See United States v. Hardwell*, 80 F.3d 1471, 1499-1500 (10th Cir. 1996).

Mr. Browne next argues that if the district court can count this one kilogram in calculating his sentence it should be treated as powder cocaine and not crack cocaine. While Mr. Browne objected to his PSR's inclusion of that kilogram in calculating his base level offense, and objected at sentencing to the extraordinarily high sentences for dealing crack cocaine, nowhere did he claim that the kilogram should be considered as cocaine, not crack, if it was counted. "A defendant [must] raise alleged factual inaccuracies in a presentence report before the district court in order to preserve the issue on appeal." *United States v. Saucedo*, 950 F.2d 1508, 1518 (10th Cir. 1991), *overruled on other grounds by Stinson v. United States*, 508 U.S. 36 (1993); *see also United States v. Yarnell*, 129 F.3d 1127, 1137-39 (10th Cir. 1997); *United States v. Windle*, 74 F.3d 997, 1001 (10th Cir. 1996). Because Mr. Browne did not raise this issue below he has waived it on appeal, and we do not consider it.

Mr. Browne next argues that the district court did not make any factual findings as to the half kilogram of cocaine recovered on June 23, 1995. However,

Mr. Browne did not object to the portion of his PSR which found him responsible for that particular half kilogram. Paragraph 22 of Mr. Browne's PSR held him accountable for two kilograms of cocaine: a half kilogram in April 1995, the one kilogram seized from Mr. Phillips in Ontario in May 1995, and a half kilogram on June 23, 1995. Mr. Browne objected to the half kilogram from April and Mr. Phillips' kilogram. Mr. Browne responded to paragraph 22, "based on [those] objections, it is the defendant's position that he can be held accountable for only ½ kilogram of cocaine." Rec., vol. XXI, at 17. It thus appears that he admitted to distributing the half kilogram of cocaine in June 1995. "'Failure to object to a fact in a presentence report, or failure to object at the hearing, acts as an admission of fact.'" *Windle*, 74 F.3d at 1001 (quoting *United States v. Deninno*, 29 F.3d 512, 580 (10th Cir. 1994)). As noted above, this failure to object below precludes review. *See id.* We therefore decline to consider this issue.

## V.

## CONCLUSION

We **AFFIRM** Mr. Green's convictions. We **AFFIRM** Mr. Bly's conviction but **VACATE** his sentence and **REMAND** for resentencing de novo. We **REMAND** Mr. Browne's sentence for further factual findings consistent with this opinion.

-32-