**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 18 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

PASQUAL CERPA,

    Defendant-Appellant.

No. 99-2264
(D.C. No. 99-CR-7-LH)
(District of New Mexico)

**ORDER AND JUDGMENT**[*]

Before **EBEL**, **PORFILIO**, and **LUCERO**, Circuit Judges.

Pasqual Cerpa appeals his conviction for distribution of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2.  Mr. Cerpa challenges: 1) the admission of testimony concerning previous drug sales he made to the government's chief witness, Thomas Chavez, as intrinsic to the crime charged; 2) the admission of testimony of undercover Officer Matthew Lujan

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

about a previous purchase of crack cocaine from Mr. Cerpa; 3) the sufficiency of the evidence supporting his conviction; and 4) the calculation used to determine the amount of cocaine for which he was sentenced. After a review of the record, we conclude the district court's mischaracterization of certain evidence as intrinsic and the resulting lack of a limiting instruction did not prejudice Mr. Cerpa. None of Mr. Cerpa's other challenges have merit.

On December 15, 1998, the Albuquerque, N.M., police conducted undercover operations at the Bow and Arrow Motel, a location reputed for crack cocaine distribution. Albuquerque Police Officers Matthew Lujan and Herman Martinez contacted Thomas Chavez and asked if he could get them crack cocaine. Mr. Chavez said he would. The officers gave Mr. Chavez a previously photocopied twenty-dollar bill and watched him go to room 18, knock on the door, and enter. Shortly after, Mr. Chavez rejoined the police officers in the parking lot and delivered to them a rock of crack cocaine. Upon delivery of the cocaine, Mr. Chavez was arrested, and officers entered room 18 and arrested Leslie Mora and Pasqual Cerpa. Ms. Mora had in her pocket the pre-identified twenty-dollar bill. Officers located additional cocaine on Ms. Mora and in a small box belonging to her. A search of the room revealed male clothing and some female clothing, but no other contraband.

At trial, Mr. Chavez testified when he approached room 18 of the Bow and Arrow, Ms. Mora answered the door and allowed him to enter. Mr. Cerpa was present. Mr. Chavez stated he purchased crack cocaine from Ms. Mora while Mr. Cerpa watched. During the transaction, Ms. Mora addressed a question in Spanish to Mr. Cerpa, to which he replied "okay." Mr. Cerpa was convicted and the district court imposed a sentence of seventy-eight months' incarceration to be followed by three years of supervised release. Mr. Cerpa then filed timely notice of this appeal.

Mr. Cerpa first contends the district court erred in characterizing as intrinsic evidence Mr. Chavez's testimony about previous drug transactions with Mr. Cerpa at the Bow and Arrow. In addition to describing the sale of December 15, Mr. Chavez also testified that he had purchased crack cocaine directly from Mr. Cerpa on no less than fifty occasions at the Bow and Arrow Motel. The district court admitted this evidence as intrinsic to the sale of December 15. Mr. Cerpa argues that because any previous transactions were separate and distinct, not part of the sale in question, the evidence was not intrinsic and Mr. Chavez's testimony constituted impermissible character evidence inadmissible under Fed. R. Evid. 404(b).

Federal Rule of Evidence 404(b) provides, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," but may be admitted for a proper purpose if reasonable notice is given. Rule 404(b) only applies to evidence of acts *extrinsic* to the crime charged. *United States v. Lambert*, 995 F.2d 1006, 1007 (10th Cir. 1993) (emphasis added). Direct or intrinsic evidence of the crime charged does not fall within the ambit of the rule. We have held that evidence of other acts is intrinsic when evidence of the other acts and evidence of the charged crime "are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged." *Id.* Also, evidence is intrinsic "if the witness' testimony would be incomplete or confusing without it." *United States v. Record*, 873 F.2d 1363, 1372 (10th Cir. 1989). We review the characterization of Mr. Chavez's testimony as intrinsic for an abuse of discretion. *United States v. Green*, 175 F.3d 822, 831 (10th Cir. 1999).

It is clear that the prior drug transactions between Mr. Chavez and Mr. Cerpa, spread out over six months, did not combine with the sale of December 15 to form a "single criminal episode." The sale of December 15 was a separate incident prompted by Officer Lujan's asking Mr. Chavez to obtain crack cocaine for him. Nor are the prior sales somehow "inextricably intertwined" with the sale

of December 15; they are logically separable from this sale. Indeed, the sale of December 15 can be coherently discussed without any mention of the prior sales.

In a minimal sense, the prior sales of cocaine from Mr. Cerpa to Mr. Chavez were "necessary preliminaries" to the sale of December 15 because they provided Mr. Chavez with the knowledge of where to get crack cocaine. Nevertheless, this knowledge is not the sort of logical precursor indicated by "necessary preliminaries." The prior sales were not preparations, planning, or initial steps in the events of December 15; they were instead merely similar transactions and relationships among the actors who happened to be involved in the sale of December 15. *See **United States v. Sullivan***, 919 F.2d 1403, 1412-13 (10th Cir. 1990).

While the testimony concerning prior sales does provide context for the transaction of December 15 and Mr. Cerpa's alleged role, Mr. Chavez's testimony would not be incomplete or confusing without it. The tale is coherent without mention of prior sales. The sale by Ms. Mora to Mr. Chavez in room 18 and the contemporaneous presence and conversation with Mr. Cerpa are clearly established by Mr. Chavez's testimony without reference to prior transactions among the participants. Thus, the testimony offered by Mr. Chavez of prior drug transactions with Mr. Cerpa fits none of the characteristics of intrinsic evidence defined by our previous cases.

Moreover, the government itself provides reason to categorize Mr. Chavez's testimony as Rule 404(b) rather than intrinsic evidence. The government proffers this portion of Mr. Chavez's testimony, at least in part, "to show Cerpa's continuing plan (to sell crack cocaine from the Bow and Arrow to previous customers) and mode of operation (use of the motel and refusing to sell in presence of persons he did not know)." We note that these evidentiary purposes, continuing plan and mode of operation, are classic examples of just the sort of evidence that Rule 404(b) governs.[1] To achieve these evidentiary purposes the government must subject its evidence to the inquiry mandated by Rule 404(b) and to the limiting instruction that would accompany such a submission. The district court erred in allowing this testimony as intrinsic to the charged crime.

Nevertheless, for two reasons, the district court's admission of this evidence does not change our disposition. First, the remedy for the district court's error would have been a limiting instruction to the jury on the allowable uses for Mr. Chavez's testimony. As appellant's counsel conceded in oral argument, the jury could have reached the same verdict despite such an

---

[1] Rule 404(b) provides that evidence of prior bad acts is admissible for purposes other than to show action in conformity with character. Such purposes include, but are not limited to: proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

instruction. Second, and more important, the evidence against Mr. Cerpa supported a conviction even if Mr. Chavez's testimony about the prior sales had been excluded entirely. For these reasons then, we believe although the district court abused its discretion in allowing Mr. Chavez's testimony without a limiting instruction, it did not prejudice Mr. Cerpa.

Mr. Cerpa also raises a challenge to the district court's admission of Officer Lujan's testimony about his previous crack cocaine purchase from Mr. Cerpa. After Mr. Cerpa's arrest, Officer Lujan realized that he had previously purchased crack cocaine from him at the Bow and Arrow Motel on September 9, 1998.[2] The United States served notice of intent to introduce Officer Lujan's testimony about this incident against Mr. Cerpa pursuant to Rule 404(b). The testimony was admitted at trial with a limiting instruction. Mr. Cerpa contends the evidence was improper character evidence barred by Rule 404(b). The district court rejected this argument and found the evidence properly admissible.

---

[2] No arrest arose from this incident because the Albuquerque police were unable to locate the suspect after the purchase. Officer Lujan purchased the cocaine in the outside area of the motel, watched while Mr. Cerpa went into room 5 to retrieve it, and asked him for a pager number. Mr. Cerpa had no number, but told the officer to return to the Bow and Arrow if he wanted to purchase more. One hour later, officers were unable to locate Mr. Cerpa for arrest, nor did they have his name.

In reviewing the district court's admission of the controverted evidence, we apply a four-part test examining whether: (1) the prosecution offered the evidence for a proper purpose under Rule 404(b); (2) the evidence is relevant under Fed. R. Evid. 401; (3) the evidence's probative value is not substantially outweighed by its potential for unfair prejudice under Fed. R. Evid. 403; and (4) the district court, upon request, gave a proper instruction limiting the jury's consideration of the evidence to the purpose for which it was admitted. *United States v. Segien,* 114 F.3d 1014, 1022-23 (10th Cir. 1997) (citing *Huddleston v. United States*, 485 U.S. 681, 691 (1988)).

Here, the district court found the testimony was offered for a proper purpose: to show intent and knowledge. In evaluating the relevance of prior narcotics involvement in a subsequent narcotics case, we have noted that prior narcotics involvement is relevant when that conduct is "close in time, highly probative, and similar to the activity with which the defendant is charged." *United States v. Wilson*, 107 F.3d 774, 785 (10th Cir. 1997). The sale testified to by Officer Lujan took place just more than three months prior to the sale of December 15, which is sufficiently close in time. The sale involved the same drug, in similar quantities, at the same motel, using similar terminology, making the evidence highly probative of Mr. Cerpa's knowledge and intent, and similar activity. Moreover, the evidence is highly probative, and its probative value is

not substantially outweighed by danger of unfair prejudice. The district court

gave an appropriate limiting instruction after the evidence was admitted. The

district court's decisions were in accord with the law and procedure of this Circuit

and certainly not an abuse of discretion.

In assessing a claim of insufficient evidence to sustain a conviction, we

review the entire record *de novo* in the light most favorable to the government to

determine whether a reasonable jury could find guilt beyond a reasonable doubt,

based on the direct and circumstantial evidence, together with reasonable

inferences to be drawn therefrom. *United States v. Jenkins*, 175 F.3d 1208, 1215

(10th Cir. 1999). The evidence must be substantial, raising more than a mere

suspicion of guilt. *United States v. Anderson*, 189 F.3d 1201, 1205 (10th Cir.

1999).

Mr. Cerpa was charged with knowingly and intentionally distributing

cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), as a principal,

and as an aider and abetter, 18 U.S.C. § 2. A conviction under either theory is of

equal consequence to Mr. Cerpa, so the government need only demonstrate

evidence that would allow a conviction as an aider and abetter. To ground

liability as an aider and abetter, the government must show the defendant

deliberately associated himself with the crime in some way and participate in it

with the intent to bring about the crime. ***United States v. Green***, 175 F.3d 822, 832 (10th Cir. 1999).

Construing the evidence in favor of the government, even entirely disregarding the testimony of Mr. Chavez about previous sales, leaves little room to doubt that a rational jury could have convicted Mr. Cerpa of aiding and abetting in the sale of December 15. Mr. Cerpa furnished the room that was the scene of the transaction in a motel known as a locus of the drug trade. When Ms. Mora sold the cocaine to Mr. Chavez, Mr. Cerpa was in a position to observe what she was doing. The expert testimony of Officer Lujan at trial, unchallenged by the appellant, established that some dealers habitually had others, particularly women, handle their drugs for them. Moreover, Officer Lujan's testimony about the sale of September 9, 1998, demonstrates Mr. Cerpa's knowledge and intent to deal crack cocaine from the Bow and Arrow. The evidence, taken as a whole, is enough to ground a reasonable jury's decision that the government had carried its burden on Mr. Cerpa's association with the crime and desire for its success.

The government has the burden of establishing by a preponderance of the evidence the quantity of drugs for which Mr. Cerpa is responsible. We review the district court's calculation of that amount as a finding of fact which will be set aside only if it is clearly erroneous. ***Id.*** at 835.

Here, the district court calculated the amount of cocaine attributable to Mr. Cerpa as at least 8 grams. It did so by accepting the testimony of Mr. Chavez that he had bought crack cocaine from Mr. Cerpa at least fifty times, and using the December 15 purchase of .16 grams as the average weight of those purchases (50 x .16 = 8). Mr. Cerpa protests the only weight attributable to him is the .16 grams of December 15 and the testimony of Mr. Chavez is "unreliable, unbelievable and unverifiable." The determination of credibility, however, is made in the district court by the finder of fact. It has no place on appeal.

As finder of fact in this instance, the district court was in a position to evaluate Mr. Chavez's testimony directly, and its determination of his credibility is entitled to considerable deference. *United States v. Cook*, 949 F.2d 289, 297 (10th Cir. 1991). Mr. Chavez's testimony was not contradicted by extrinsic evidence nor was it internally inconsistent or implausible on its face. There is no clear error here.

**AFFIRMED**.

ENTERED FOR THE COURT

John C. Porfilio
Senior Circuit Judge

- 11 -