**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 18, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ZACHARY GAGE PEBLEY, a/k/a
Zackary Gage Pebley,

    Defendant - Appellant.

No. 20-7022
(D.C. No. 6:19-CR-00083-RAW-1)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **KELLY**, and **EID**, Circuit Judges.[**]
_____

Defendant-Appellant Zachary Pebley appeals from his conviction for bank

robbery, 18 U.S.C. §§ 2113(a) and (d), and using, carrying, and brandishing a firearm

during and in relation to a crime of violence, 18 U.S.C. § 924(c)(1)(A)(ii). He was

sentenced to 63 months on the bank robbery conviction and 84 months,

consecutively, on the firearm conviction, as well as supervised release terms. At the

center of trial was the identity of the bank robber. On appeal, Mr. Pebley argues that

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument.

the district court erred in admitting three recorded excerpts of telephone calls made by him while an inmate at the Carter County jail in Oklahoma. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

### Background

On October 15, 2019, a man entered a Bank of the West, pointed a gun at the bank teller, and yelled "[g]ive me the money." 2 R. 61–62. The man handed the teller a white pillowcase and she filled it with more than $3,000 in cash. A witness described the robber as a white male wearing a blue shirt and blue jeans. His face was covered with a bandana, he wore glasses and a hat, and he carried what appeared to be a nickel-plated .380-caliber pistol. After getting the money, the robber exited the bank.

Outside the bank, Taber Knight witnessed a man carrying a bag running across a parking lot. Mr. Knight saw him run to a creek, fall in, and get out with wet pants. Mr. Knight began following the man across the creek because he suspected the man had taken a woman's purse. When Mr. Knight caught up to him, the man threw the bag at Mr. Knight spilling money on the ground. Mr. Knight proceeded to hit him several times because Mr. Knight believed he was reaching for a knife. After knocking the man out, Mr. Knight collected the money, returned to the parking lot, and handed the bag over to the police. Later, Mr. Knight identified this man as Mr. Pebley.

Police officers began searching the area with a K-9 unit and eventually discovered Mr. Pebley hiding under an RV. Mr. Pebley was wearing jeans that were wet and muddy, and officers recovered a hat, ten-dollar bill, .380-caliber pistol, and blue shirt. Moreover,

2

officers discovered an abandoned truck left with the motor running in a nearby parking lot. The truck had a pillow in the front seat without a pillowcase, and officers found a credit card and driver's license with Robert Nichols' name on them.

During trial, the government presented testimony from Traci Goodwin, who had been with Mr. Nichols and Mr. Pebley before the robbery. She testified that the men had been at her house doing work and that Mr. Nichols had brought a silver and black gun. Ms. Goodwin also loaned Mr. Pebley a shirt, which matched the one recovered by the police. After they were done working, they all left in Mr. Nichols' truck and dropped Mr. Nichols off at his mother's home. Mr. Pebley then drove Ms. Goodwin and her roommate to the store in Mr. Nichols' truck and agreed to pick them up after they were done shopping. Mr. Pebley did not return.

Following his arrest, Mr. Pebley was booked into Carter County jail. While he was detained at the jail, three calls were placed using Mr. Pebley's identification number. In the first call (Gov. Ex. 59), the speaker stated that he had not been knocked out and had a bag full of money. In the second call (Gov. Ex. 60), the speaker said he was alone and drove there in a truck. In the third call (Gov. Ex. 61), the speaker said the government had everything, including the gun and money. FBI agent Steve West identified the speaker as Mr. Pebley.

The government sought to admit these recordings at trial and called two witnesses to lay a foundation: FBI agent West and Melissa Darter, the Carter County Sherriff's Office administrative assistant. Ms. Darter testified about the jail's procedures regarding the recording of inmate's phone calls. She stated that each inmate has an identification

3

number which he or she must enter in order to make a phone call. Ms. Darter explained that inmate calls are recorded, and the recordings are stored by a third party, City Tele Coin. She accesses the recordings from City Tele Coin's systems by entering the inmate identification number. Then she can copy the recordings onto a disk, as she did in this case. She ultimately testified that the recording system works properly and accurately and that she did not make any alterations or deletions to the disk she provided to agent West. She did note, however, that she does not know how City Tele Coin stores the information or how they gather and send her the recordings. Agent West's testimony regarding the recordings focused on identifying the speaker as Mr. Pebley. He was able to identify Mr. Pebley's voice based on a conversation they had during a three-hour drive while transporting Mr. Pebley.

When the government moved to admit the recordings, Mr. Pebley objected, in part, because there was a lack of authentication and problematic chain of custody. He argued that there was no evidence showing that inmates were restricted from using another inmate's identification number. He further noted that there was no evidence showing how City Tele Coin stored the records and whether that method was reliable. The district court overruled the objection.

## Discussion

Mr. Pebley argues that the district court erred in admitting the phone recordings because there was inadequate authentication and chain of custody. We

review the district court's admission of these recordings for abuse of discretion. United States v. Thomas, 749 F.3d 1302, 1310 (10th Cir. 2014).

Federal Rule of Evidence 901 provides that a party seeking to admit an item of evidence "must produce evidence sufficient to support a finding that the item is what the proponent claims it is." In the context of phone recordings, we have "adopted a flexible approach" when determining whether the proponent of the evidence has laid sufficient foundation. United States v. Green, 175 F.3d 822, 829–30 (10th Cir. 1999). We consider various nondispositive factors including whether the device is capable of recording the conversation, whether the speakers are identified, and whether the recording has been altered, to name a few. Id. at 830 n.3 (citing United States v. McKeever, 169 F. Supp. 426 (S.D.N.Y. 1958), for the list of factors). Chain of custody is a related process that helps establish authentication when evidence "is not readily identifiable and is susceptible to tampering or contamination." Thomas, 749 F.3d at 1310. We do not require a perfect chain of custody in order for evidence to be admissible, and deficiencies in the chain generally "bear on the weight of the evidence rather than its admissibility." Id. Ultimately, we will not reverse the district court's ruling "unless the foundation was clearly insufficient" to ensure the recording's accuracy. Green, 175 F.3d at 830 (citation omitted).

At the outset, Mr. Pebley does not appear to suggest that the recorded phone conversations were involuntary or that the system was incapable of recording the conversation. See id. at 830 n.3 (factors 1 and 7). Mr. Pebley was also identified as the speaker based on agent West's familiarity with his voice and because Mr.

5

Pebley's inmate identification number was associated with the call. See id. (factor 6). Finally, Ms. Darter testified that she did not alter the recordings in any way nor did she even listen to the recordings. See id. (factor 4). Indeed, Mr. Pebley does not really contend that the recordings have been altered, and we do not require the government "to eliminate absolutely the possibility of alteration." United States v. Wood, 695 F.2d 459, 463 (10th Cir. 1982).

Mr. Pebley relies on two cases: United States v. Bush, 405 F.3d 909 (10th Cir. 2005), and United States v. Smith, 692 F.2d 693 (10th Cir. 1982). In Bush, this court upheld the admission of a recorded conversation between a detective and the defendant because the detective was able to identify the defendant's voice. 405 F.3d at 918–19. We stated that voice identification is appropriate under Rule 901 and that "[s]uch voice identification need only rise to the level of minimal familiarity." Id. at 919. Although establishing foundation was more straightforward in Bush given the detective's personal involvement in the call, it still supports agent West's ability to identify Mr. Pebley in this case. In Smith, this court reviewed extensive foundation evidence from multiple sources and concluded that the district court did not abuse its discretion. 692 F.2d at 698. In so doing, the court did not set a floor suggesting that less evidence of foundation is necessarily insufficient.

Mr. Pebley also relies on out-of-circuit cases where the proponents provided testimony from third-party vendors explaining their recording and storage processes. See, e.g., United States v. Johnson, 943 F.3d 214, 220–21 (5th Cir. 2019). He relies principally on the Fifth Circuit's approach that requires showing "the competency of

6

the operator, the fidelity of the recording equipment, the absence of material deletions, additions, or alterations . . . , and the identification of the relevant speakers." United States v. Biggins, 551 F.2d 64, 66 (5th Cir. 1977). A strict application of those factors could be read as requiring testimony from a Tele City Coin witness in this case. However, not only does the Fifth Circuit flexibly apply these factors, see Johnson, 943 F.3d at 220, but we have also "specifically rejected the adoption of 'inflexible foundation criteria . . . .'" United States v. Jones, 730 F.2d 593, 597 (10th Cir. 1984) (brackets and citation omitted). While it certainly would have been helpful to have a City Tele Coin witness testify, this chain-of-custody gap goes to the evidence's weight, not its admissibility. Thomas, 749 F.3d at 1310. Ms. Darter's description of the jail's recording process and agent West's voice identification were enough to ensure the recordings' reliability.

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge

7