**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 29 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

EDWARD HOWARD KELL,

    Defendant - Appellant.

No. 00-6367
(D.C. No. 00-CR-25-R)
(W. D. Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **KELLY** and **McWILLIAMS**, Circuit Judges; **STAGG,** District Judge[**]

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] The Honorable Tom Stagg, United States District Judge for the Western District of Louisiana, sitting by designation.

Defendant Edward Howard Kell ("Kell") was one of thirteen members of a large drug conspiracy indicted in a lengthy seventy-seven count indictment. He entered a "straight-up" guilty plea (i.e., no plea bargain) to 5 counts, including the principal conspiracy counts, and was sentenced to 210 months in prison. In his appeal, Kell argues that he pled guilty to an offense involving powder cocaine and the district court erroneously applied sentencing guidelines applicable to crack cocaine. Kell contends that his correct sentence level, with acceptance of responsibility, should be a level 29 rather than level 32. The difference for this Category III defendant ranges from 108 to 135 months versus 210 to 262 months. For the reasons hereinafter set forth, we AFFIRM.

## I. BACKGROUND

On December 30, 1999, Kell was arrested en route to deliver one kilogram of powder cocaine to Ellis Stanton ("Stanton"), the head of an organization that manufactured and trafficked a variety of drugs including cocaine powder, cocaine base, and PCP. Beginning in the spring of 1998, Stanton periodically purchased single kilograms of cocaine powder from Kell and converted either some or all of it to cocaine base. Over the course of their business relationship, Kell sold Stanton a total of approximately five kilograms of cocaine powder. Kell has freely admitted to being a supplier of cocaine powder to Stanton.

As a result, Kell was charged with one count of conspiracy to possess with intent to distribute cocaine powder, cocaine base, and PCP in violation of 21 U.S.C. § 846; two

counts of using a telephone to facilitate the distribution of cocaine in violation of 21

U.S.C. § 843(b); one count of possession with intent to distribute and the distribution of

approximately one kilogram of cocaine powder in violation of 21 U.S.C. § 841(a)(1); and

one count of possession with intent to distribute and the distribution of approximately

nine ounces of cocaine powder in violation of 21 U.S.C. § 841(a)(1).  Accepting

responsibility for his role as a supplier, Kell entered a plea of guilty, without the benefit

of a plea agreement, to all counts of the indictment.[1]  Subsequently, the court ordered that

a presentence investigation report be prepared.  The report calculated Kell's sentence

range based on both the distribution of 6.95 kilograms of cocaine base as well as one

kilogram of cocaine powder.  Accordingly, Kell's offense level, following an adjustment

for acceptance of responsibility, was set at 35 with a criminal history category of III.  Kell

---

[1]        In accordance with the practice in the Western District of Oklahoma, Kell
filed a "Petition To Plead Guilty," a form with numerous fill-in-the-blanks evincing his
understanding of the charges and the effect of his plea.  For instance, question 47 asks:

> What act or acts did you do to commit the offense or offenses to which you
> are now pleading guilty?

His response was:

> During the time period alleged in the Indictment I possessed cocaine with
> the intent to distribute.  Specifically I acted with Ellis Stanton in a criminal
> enterprise to distribute cocaine.  During that same time period, specifically
> Dec. 30, 1999 and Jan. 7, 2000, I possessed cocaine powder with the intent
> to distribute.  Also during that same period of time, specifically Dec. 29th
> and 30th 1999, I used the telephone to distribute cocaine powder.  Said acts
> were done in the Western District of Oklahoma.

filed written objections contending that cocaine base should not have been factored into the calculation of his guideline range, and argued to that effect at his sentencing hearing.

In his objection to the presentence investigation report and at the sentencing hearing, Kell admitted his guilt on all counts in relation to conspiracy and distribution of powder cocaine. However, Kell denied any involvement with either cocaine base or PCP and argued that the court should not apply the guideline range for crimes involving those drugs. Although the government did not assert that Kell had physically assisted Stanton in the manufacture of cocaine base, the government did insist that Kell was involved with Stanton in a conspiracy to manufacture cocaine base. The government based this assertion largely on testimony from Stanton and intercepted phone calls between Kell and Stanton. Specifically, Stanton testified that "cooking" a kilogram of Kell's powder cocaine would only yield between 750-800 grams of crack cocaine. Stanton further testified that he contacted Kell each time after "cooking" to discuss this problem. The government also introduced an intercepted call between Stanton and Kell that supported Stanton's testimony. This conversation dealt with the sale of a kilogram of powder cocaine which Stanton planned to convert into cocaine base. During the call, Kell stated, "if you step into it and it's not what you want, let me know before you go too far." Additionally, Stanton testified that with the exception of the first kilogram for which he paid $17,500, the poor quality of Kell's cocaine resulted in his requiring Kell to front powder cocaine to him for payment later and that Kell would accept payment for the

-4-

quantity that was successfully cooked instead of for the full amount. The series of telephone calls shows beyond any doubt that Kell knew that his cocaine was being converted into crack.

After reviewing the presentence investigation report and considering the testimony and arguments presented by the parties, the district court made specific findings and implemented the calculations found in the presentence investigation report which set Kell's total offense level at 35, criminal history category III, for a range of 210-262 months. The court then sentenced Kell to 210 months on count 1, conspiracy to possess with intent to distribute cocaine powder, cocaine base and PCP; 48 months on counts 60 and 61, use of a communication device to facilitate the acquisition and distribution of cocaine; 60 months on count 62, distribution of approximately one kilogram of cocaine powder; and, 210 months on count 65, distribution of approximately nine ounces of cocaine powder, all sentences to run concurrently. The court also imposed a supervised release term of 3 years on counts 1 and 65, 1 year on counts 60 and 61, and 4 years on count 62, all to run concurrently.

In his appeal, Kell challenges the application of the sentencing guidelines for cocaine base and raises two main issues for this court to consider. First, Kell contends that count 1 was duplicitous in that it charged Kell with a conspiracy to distribute three different drugs: cocaine powder, cocaine base, and PCP. Second, Kell argues that the court applied the wrong legal standard in analyzing the facts of his case.

## II. LAW AND ANALYSIS

We review the district court's application of the sentencing guidelines *de novo*. *See United States v. Asch*, 207 F.3d 1238, 1242 (10th Cir. 2000). Accordingly, if the district court has chosen among several offense guidelines, the Tenth Circuit reviews the district court's choice *de novo*. *See United States v. Fortier*, 180 F.3d 1217, 1225 (10th Cir. 1999). However, factual findings underlying the district court's application of the guidelines are reviewed for clear error. *See United States v. Roederer*, 11 F.3d 973, 977 (10th Cir. 1993). The sentencing court's decision is clearly erroneous only if it is not plausible or permissible in light of the entire record. *See United States v. Morales*, 108 F.3d 1213, 1225 (10th Cir. 1997).

Kell's first ground for challenging his sentence is that his conspiracy charge was duplicitous. Count 1 charged Kell with conspiracy to possess with intent to distribute and to distribute three separate drugs: cocaine powder, cocaine base, and PCP. Kell contends that this language alleged three separate conspiracies in one count and afforded the government the opportunity to unfairly "bootstrap" his involvement with cocaine powder to conspiracies involving crack cocaine and PCP.

This argument is not available to Kell. "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S.

258, 267, 93 S.Ct. 1602 (1973). Thus, by entering a plea of guilty, Kell waived all

potential non-jurisdictional defenses, including any defective indictment claims. *See*

*United States v. Browning*, 61 F.3d 752, 753 (10th Cir. 1995) (citing *United States v.*

*Davis*, 900 F.2d 1524, 1525-26 (10th Cir. 1990)).

Regardless, if given the opportunity to consider the merits of Kell's argument, we

would disagree with Kell's characterization of the conspiracy charge as duplicitous.

Listing three different drugs, or three different crimes, in a single count of conspiracy is

not necessarily duplicitous. A charge of conspiracy is an allegation that an agreement

occurred to commit one or more crimes. In other words, it is the agreement which

constitutes the conspiracy, not the individual drug crimes that are the objects of the

conspiracy. *See Braverman v. United States*, 317 U.S. 49, 53-54, 63 S.Ct. 99, 101-02

(1942); *United States v. Broce*, 488 U.S. 563, 570-71, 109 S.Ct. 757, 763 (1989) ("a

single agreement to commit several crimes constitutes one conspiracy"); *Timberlake v.*

*United States*, 767 F.2d 1479, 1483 (10th Cir. 1985). We find it abundantly clear that

Kell's indictment charged him with entering into a single conspiracy to sell each of the

drugs listed.

Nevertheless, the court must administer the conspiracy doctrine with vigilance. As

we have previously recognized, "the government frequently uses conspiracy to cast a

wide net that captures many players. Thus we must be careful to guard against guilt by

association, to 'scrupulously safeguard each defendant individually, as far as possible,

from loss of identity in the mass.'" *United States v. Evans*, 970 F.2d 633, 668 (10th Cir. 1992) (quoting *Kotteakos v. United States*, 328 U.S. 750, 773, 66 S.Ct. 1239, 1252 (1946)). However, we believe that the requirements of reasonable foreseeability and scope, discussed *infra*, allay the concerns that we articulated in *Evans*.

Kell next asserts that the district court used the incorrect legal standard in applying the sentencing guidelines to the conspiracy charge. Specifically, Kell argues that the court failed to inquire as to the scope of the agreement between Stanton and Kell. For sentencing purposes in a drug conspiracy case, a defendant is accountable for the quantity of drugs that was both within the scope of his agreement and reasonably foreseeable to him. *See United States v. Johnston*, 146 F.3d 785, 795 (10th Cir.1998); *United States v. Arias-Santos*, 39 F.3d 1070, 1078 (10th Cir.1994). The district court clearly found that the conversion of cocaine powder into cocaine base was reasonably foreseeable to Kell. In his ruling at the sentencing hearing, Judge Russell found,

> . . . (United States Sentencing Guidelines section 1B1.3) just couldn't be
> clearer that in the case of jointly undertaken criminal activity, which is what
> Mr. Kell pled to, conspiracy, all reasonably foreseeable acts – well, that's a
> reasonably foreseeable act. Not just reasonably foreseeable, it happened,
> and he knew it happened, and that was that it was being made into crack.
> However, "reasonable foreseeability is not by itself sufficient to establish liability

for the acts of co-conspirators. To be considered as relevant conduct, such acts also must be in furtherance of 'jointly undertaken criminal activity.'" *United States v. Melton*, 131 F.3d 1400, 1405 (10th Cir. 1997) (quoting *United States v. McDuffy*, 90 F.3d 233, 236 (7th Cir.1996)). We have explained that for a defendant to be guilty of conspiracy, the government must establish that the defendant "agreed to violate the law, that [he] knew at least the essential objectives of the conspiracy, and that he knowingly and voluntarily became part of the conspiracy." *United States v. Green*, 175 F.3d 822, 832 (10th Cir. 1999) (quoting *United States v. Williams*, 923 F.2d 1397, 1402 (10th Cir.1990)). Additionally, we have given effect to application note two of United States Sentencing Guidelines section 1B1.3 which states that

> [b]ecause a count may be worded broadly and include the conduct of many participants over a period of time, the scope of the criminal activity jointly undertaken by the defendant (the 'jointly undertaken criminal activity') is not necessarily the same as the scope of the entire conspiracy, and hence relevant conduct is not necessarily the same for every participant.

*See Green*, 175 F.3d at 837; *United States v. Tran*, 281 F.3d 1183, 1187 (10th Cir. 2002). As a result, we recognize that in certain circumstances, a defendant can be convicted of conspiracy but not punished for all acts that foreseeably correlate to his own crimes because the scope of his particular agreement is not necessarily equivalent to the scope of the entire conspiracy. Still, the government need not prove that the defendant expressly

agreed to the criminal object of the conspiracy; tacit agreement is sufficient. *See Green*, 175 F.3d at 832 (quoting *United States v. Hartsfield*, 976 F.2d 1349, 1354 (10th Cir.1992)).

When determining the offense level for conspiracy crimes, "[p]roper attribution at sentencing requires the district court to analyze, and make 'particularized findings' about, the scope of the specific agreement the individual defendant joined in relation to the conspiracy as a whole." *Melton*, 131 F.3d at 1404 (citing *United States v. Thomas*, 114 F.3d 228, 234 (D.C. Cir. 1997)). However, "Even a 'brief' finding can be sufficient if, when viewed in context, it is more than simply a generalized or conclusory finding that [the defendant] was involved in the conspiracy." *Thomas*, 114 F.3d at 255.

Although, from the outset, it appears that Judge Russell failed to discuss the scope of the agreement between Stanton and Kell, any such omission is, at the very worst, harmless error. Judge Russell stated that the conversion of Kell's cocaine powder into cocaine base was "not just reasonably foreseeable, it happened, and (Kell) knew it happened, and that was that it was being made into crack." This pronouncement is clearly more than a conclusory finding that Kell was involved in the conspiracy. Furthermore, in light of the evidence presented at the sentencing hearing, we cannot find that the district court committed clear error in its assessment of the facts. As noted *supra*, Stanton testified that after he cooked cocaine sold to him by Kell, he would phone Kell to inform him that he could only yield 750-800 grams from the individual kilograms that Kell sold

him.  The government introduced an intercepted phone conversation to support this. During this conversation, Kell stated, "if you step into it and it's not what you want, let me know before you go too far."  In light of this evidence, the district court's findings of foreseeability and scope were not clearly erroneous.

AFFIRMED

Entered for the Court

Tom Stagg
District Judge