**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 2 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOSE ESTEBAN GUERRERO,

Defendant-Appellant.

No. 03-2071

District of N.M.

(D.C. No. CR–02-953-BB)

---

**ORDER AND JUDGMENT** *

---

Before **SEYMOUR**, **HARTZ**, and **TYMKOVICH**, Circuit Judges.

---

Jose Esteban Guerrero appeals his conviction and subsequent sentencing

under 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 for conspiracy to possess

with intent to distribute, possession with intent to distribute, and distribution of

500 grams or more of methamphetamine. After Guerrero's conviction, the district

court found that Guerrero had two prior felony drug convictions, and therefore

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

sentenced him to life in prison, the mandatory minimum sentence under 21 U.S.C. § 841 (b)(1)(A).

Guerrero asks us to reverse his convictions, or in the alternative, his life sentence, alleging four errors below. According to Guerrero: (1) the prosecutor engaged in prejudicial misconduct during his closing statement; (2) the government failed to present sufficient evidence to support the conspiracy conviction; (3) the prosecution failed to comply strictly with the notice mandates of 21 U.S.C. § 851 before the district court enhanced his sentence; and (4) the government failed to meet its burden proving that Guerrero in fact had two prior felony drug offense convictions.

Finding no error by the district court, we affirm.

Background

The government's case against Guerrero began in May 2001, when Juan Cano, a drug dealer who had been working as a government informant on another investigation, ran into Guerrero, his former drug supplier, at a restaurant in Los Arcos, New Mexico. Guerrero told Cano he had two pounds of methamphetamine for sale, and asked if Cano could help him. Cano said he might be able to find a buyer for the drugs.

Cano then informed DEA officer Greg Cunningham of the encounter. Officer Cunningham told Cano to try to set up a deal with Guerrero. Cano called

Guerrero, told him he had a buyer, and asked Guerrero for a sample of the methamphetamine. Guerrero picked up Cano at home later that day, and eventually stopped at a house that served as a used car dealership. Guerrero went into the house and returned with a baggie containing a sample of the drug, which he gave to Cano. Cano in turn gave the sample to Officer Cunningham.

The next day Cano, wearing a recording device, called Guerrero to arrange a meeting between Guerrero and the buyer. Guerrero refused to meet Cano's buyer, and told Cano to meet him alone that evening. At the meeting, Guerrero agreed to sell Cano the two pounds of methamphetamine for $5700 per pound. The two parted, and Cano went to meet with DEA task force members to coordinate a plan for the purchase and sale. Cano then called Guerrero and arranged to meet him at a gas station where task force members could observe the transaction.

At the gas station, Cano, still wired, met Guerrero, and the two drove in Cano's car to a junkyard where they met a man who identified himself as "Dominic."[1] Guerrero told Dominic he and Cano were "there to pick up the stuff that he had given him." Dominic went into a back room and returned with two

---

[1] Dominic was later identified as Thomas Roy Dunlap. Dunlap was charged as Guerrero's coconspirator in this case, and pled guilty on November 27, 2002.

packages containing what appeared to be methamphetamine, which he gave to Guerrero. Guerrero passed them on to Cano, then left with Dominic.

Cano then met with task force members and turned over the methamphetamine. He also called Guerrero to arrange a meeting to pay for the drugs. The two met shortly thereafter in a parking lot. Cano got in Guerrero's car and told him the sale was done, to which Guerrero responded, "Good." Cano then left the car to get the money for Guerrero. At this point DEA officers arrested Guerrero and Cano.

The two packages were later tested and shown to contain a total of 893.9 grams of methamphetamine. The sample Guerrero had given Cano weighed 1.1 grams, and officers found an additional 140 grams when they searched the junkyard.[2]

## Discussion

### I.

Guerrero argues that all his convictions in this case should be overturned because the prosecutor engaged in misconduct that deprived him of his right to a fair trial. Guerrero complains of two sets of statements made by the prosecutor during his closing argument. First, the prosecutor said that "people who deal

---

[2] The 895 grams Guerrero gave Cano equal approximately 1.97 pounds, just under the two pounds the pair originally discussed.

drugs use code words because they don't want others to know what they are doing . . . . [The tape recordings] take you into a conversation between a drug dealer and a government informant." The prosecutor went on to state that he had "cracked the code," telling the jury "five and seven" meant $5700 per pound of drugs, and that "crystal equals meth."

Guerrero's second point of contention revolves around the prosecutor's statement that "If I had a tape recorder on my dog, I could have still proved this case." Guerrero claims both of these statements asserted personal knowledge of Guerrero's guilt on the part of the prosecutor beyond the evidence in the record and were designed to inflame the emotions of the jury in order to obtain a conviction despite the jury's reasonable doubts.

Because Guerrero's counsel did not object to any of these statements at trial, we will reverse only for plain error. *United States v. Ellzey*, 936 F.2d 492, 497 (10th Cir. 1991). This requires a showing of error "so basic, so prejudicial, so lacking in its elements that justice cannot have been done." *Id.* (quoting *United States v. Henning*, 906 F.2d 1392, 1397 (10th Cir. 1990)).

It is improper for a prosecutor to express a personal belief in the guilt of a defendant, *see United States v. Meienberg*, 263 F.3d 1177, 1179-80 (10th Cir. 2001), or to use closing arguments to inflame the passions or prejudices of the jury. *See United States v. Pena*, 930 F.2d 1486, 1490-91 (10th Cir. 1991).

Prosecutors may, however, draw reasonable inferences from the evidence in their closing arguments, *see United States v. Nolan*, 551 F.2d 266, 274 (10th Cir. 1997), and suggest such reasonable inferences to the jury. *See Pena*, 930 F.2d at 1490.

In this case, we see no error in allowing the jury to hear the prosecutor's statements without corrective instructions. The first statements, regarding the "code" used by drug dealers, were, contrary to Guerrero's claim, supported by the record. Officer Miguel Mendez of the New Mexico State Police testified that drug dealers use "slang terms" "so that other people that aren't in the same business don't know what you're talking about." (II App. at 249.) He also testified as to the meaning of "five and seven." (*Id*. at 251, 253-54.) Cano testified that "crystal" was the slang term for methamphetamine. (I App. at 48.) The prosecutor specifically referred to Officer Mendez's testimony during his closing argument on this point.

To the extent the prosecutor's statement that the recordings showed a conversation between an informant and a drug dealer implicitly labeled Guerrero a drug dealer, such an inference was reasonable given the evidence in the record. Further, the statement did not invite the jury to consider any evidence that was not in the record, and specifically directed the jury to consider the tape recording that had been introduced when coming to a conclusion.

-6-

Guerrero claims that the prosecutor improperly expressed his personal belief in Guerrero's guilt when he said he could have proved the case even had the tape recorder been on his dog. It is true that this statement indirectly referred to the prosecutor's belief in the strength of his case and to that extent may have been improper. It did not, however, suggest that the prosecutor wanted the jury to consider other evidence outside the record or tend to inflame any prejudices the jury might have held. The prosecutor made the statement after defense counsel's closing argument to refute Guerrero's attacks on Cano's credibility. In that context, it was simply an argument that the evidence was strong enough to support a guilty verdict even if the jury did not believe Cano's testimony. There is no reason to believe a rational jury would have taken it to mean anything else, and the district court supervising the trial had no difficulty in discerning the difference.

Though the statements about which Guerrero complains may have tread near the line between propriety and misconduct, the context in which they were given shows they referred to reasonable inferences that could be drawn from the record. Furthermore, defense counsel did not object to them at trial and the court's clear instructions to the jury that the government had the burden of proving Guerrero's guilt beyond a reasonable doubt mitigated any possible

prejudice. Therefore, the district court did not err, plainly or otherwise, in allowing them to stand.

II.

Guerrero also challenges his conspiracy conviction specifically, claiming the prosecution did not produce evidence sufficient to support such a conviction and the district court therefore erred in denying his motion for judgment of acquittal.

This court reviews claims that evidence was insufficient to support a conviction de novo. *United States v. Wilson*, 107 F.3d 774, 778 (10th Cir. 1997). It views the evidence in the light most favorable to the government, without weighing conflicting evidence or considering the credibility of witnesses. *United States v. White*, 673 F.2d 299, 301-02 (10th Cir. 1982). If the evidence viewed in such light would permit a reasonable jury to conclude beyond a reasonable doubt that each element of the crime had occurred, it is sufficient to support a guilty verdict. *Id.*; *Wilson*, 107 F.3d at 778.

The elements of the crime of conspiracy to distribute 500 or more grams of drugs are: (1) two or more persons agreed to violate the law; (2) the defendant knew at least the essential objectives of the conspiracy; (3) he knowingly and voluntarily became part of the conspiracy; and (4) the coconspirators were interdependent. *United States v. Ivy*, 83 F.3d 1266, 1285 (10th Cir. 1996).

-8-

Guerrero does not contest the facts supporting an agreement to buy and sell drugs in violation of the law or his knowledge of the agreement. Furthermore, although Guerrero argues that he was not directly involved in any illegality, the testimony of Cano and the recorded conversations show that he knowingly and voluntarily participated in the sale of the drugs.

The only open question then is the interdependence of Guerrero and the coconspirators. As Guerrero points out, it is not enough that he was merely present during an illegal sale, or that he knew about the conspiracy. *See United States v. Taylor*, 612 F.2d 1272, 1275 (10th Cir. 1980). To show interdependence, the government had to show that Guerrero's actions were "essential and integral steps toward the realization of a common, illicit goal." *United States v. Carter*, 130 F.3d 1432, 1439 (10th Cir. 1997).

The illicit goal here was the sale of two pounds of methamphetamine to Cano. The record shows plentiful evidence that the sale would not have been completed, or even contemplated, had Guerrero not participated. Guerrero initiated the discussion of the sale with Cano, brought Cano the sample, took him to the junkyard where Guerrero got the "stuff" from Dominic and gave it to Cano, and then met Cano to collect the purchase price.[3] These steps are the essence of

---

[3] To the extent there was confusion in the record as to who the owner of the methamphetamine was, we note that the record only supports a conclusion that it

(continued...)

the transaction, and demonstrate that it would never have taken place without Guerrero's participation.

Because the evidence shows Guerrero's actions were essential to the agreement to sell the drugs to Cano, we conclude the conspiracy was dependent on him. The district court therefore did not err in denying Guerrero's motion for judgment of acquittal.

III.

Guerrero next claims the prosecution did not meet its burden of proving beyond a reasonable doubt that he had been previously convicted of one of the alleged offenses relied on by the court to enhance his sentence. The district court found that Guerrero had been convicted of the sale of marijuana in 1997 and of conspiracy to possess cocaine in 1991. Guerrero only contests the sufficiency of the evidence regarding the 1991 offense.

To impose a mandatory minimum life sentence, a district court must find that the defendant has been convicted of at least two prior convictions for felony drug offenses. *See* 21 U.S.C. § 841(b)(1)(A). The government has "the burden of proof beyond a reasonable doubt on any issue of fact." 21 U.S.C. § 851(c)(1).

---

[3](...continued)
belonged to either Dominic or Guerrero, or perhaps to both jointly. Whatever the case, Guerrero's participation was essential and integral to the illicit sale. The ownership of the drugs is therefore not relevant to our consideration of his conspiracy conviction.

We review whether the evidence is sufficient to support the district court's conclusion that Guerrero had been convicted of two prior felony drug offenses de novo. *See United States v. Green*, 175 F.3d 882, 834 (10th Cir. 1999). In doing so, we view the evidence and reasonable inferences therefrom in the light most favorable to the government and will only reverse if our review persuades us that a rational trier of fact could not find beyond a reasonable doubt that the defendant had in fact been convicted of the offenses. *Id*.

The evidence introduced by the government to prove that Guerrero was the same individual convicted of conspiracy to possess cocaine in 1991 included the following: (1) a copy of the "Suspension of Sentence" that served as the judgment in *Arizona v. Jose Esteban Guerrero Rocha*, case number CR90-05747 (Sup. Ct. Ariz. 1991); (2) admissions Guerrero made in his appearance before Judge Black in a separate immigration case, in which he repeatedly admitted to having been deported after a conviction for conspiracy to possess cocaine (II App. at 321-22); (3) records from Guerrero's immigration file showing that he had in fact been deported after a conviction for conspiracy to possess cocaine, referring to case number CR90-05747 (Sup. Ct. Ariz. 1991), (II App. at 326-333), and (4) expert testimony that a fingerprint on the warrant of deportation in that case matched Guerrero's. (II App. at 33-34.)

Guerrero calls into question the experience of the fingerprint expert and the ability of other witnesses to accurately determine whether he was the same person as the person convicted in 1991. He also points out that some of the documents in question apparently misstate the actual date of his conviction.[4] However, given the extensive evidence listed above, including particularly Guerrero's own admissions that he had been convicted of conspiracy to possess cocaine in September of 1991, and viewing the evidence in the light most favorable to the government, we conclude that a rational jury could find that Guerrero in fact had been convicted of such a crime. The district court thus did not err in sentencing him to the mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A) of life in prison.

## IV.

Guerrero's final claim on appeal is that the district court erred in enhancing his sentence by not requiring the government to comply strictly with the procedural requirements of 21 U.S.C. § 851(a)(1). That section requires the United States attorney to file "before trial . . . an information with the court (and serve[] a copy of such information on the person or counsel for the person) stating

---

[4] The Suspension of Sentence is confusingly dated September 6, 1991 and stamped received September 9, 1991. The admission signed in connection with the immigration case lists the date of his conspiracy conviction as September 19, 1991.

in writing the previous convictions to be relied upon" before an enhanced sentence under 21 U.S.C. § 841(b)(1)(A) can be imposed and goes on to state that "[c]lerical mistakes in the information may be amended at any time prior to the pronouncement of sentence." 21 U.S.C. § 851(a)(1).

The timely filing and service of an enhancement information is a jurisdictional requirement. *United States v. Wright*, 932 F.2d 868, 882 (10th Cir. 1991). Jurisdictional matters are questions of law reviewed de novo. *See United States v. Delatorre*, 157 F.3d 1205, 1208 (10th Cir. 1998).

Guerrero alleges two faults with the government's enhancement information in this case: (1) it was late, and (2) it gave the wrong date for the September 1991 conviction. As to Guerrero's claim that the information was not timely filed, we note that it was hand-delivered to his trial counsel on November 29, 2002. Jury selection began in this case on December 2, 2002. In addition, before jury selection began, the court informed Guerrero that the information had been filed and asked if he understood what it meant. Guerrero and his counsel both told the court that defendant understood the ramifications of the enhancement information. (Supp. App. at 16, 37-38.)

We have held previously that where an information is filed and served before jury selection begins, it is timely. *See United States v. Gonzales-Lerma*, 14 F.3d 1479, 1484 (10th Cir. 1994). Citing *United States v. Johnson*, 944 F.2d

396, 407 (8th Cir. 1991), Guerrero would have us require that an enhancement information be given to the defendant some "reasonable" period before trial so he could consider its implications and whether he should enter a guilty plea. The statute, however, contains no such requirement, and it is not our role to demand more of the prosecution than Congress required. We therefore decline to hold that the enhancement information filed by the United States attorney three days prior to the start of trial was untimely.

Finally, Guerrero claims that the incorrect date listed on the enhancement information failed to meet the requirements of § 851(a)(1). The information form stated that Guerrero had been convicted of conspiracy to possess cocaine in Arizona state court on September 9, 1991. The actual date of that conviction was September 6, 1991.

This court dealt with the issue of an incorrect date of conviction in *United States v. Gonzales-Lerma*, 14 F.3d 1479 (10th Cir. 1994). In that case, we held that an information with an incorrect date nonetheless sufficed under § 851(a)(1) because it "provided [the defendant] reasonable notice of the government's intent to reply on a particular conviction and a meaningful opportunity to be heard." 14 F.3d at 1484.

The information in *Gonzales-Lerma* was in fact much less helpful than that provided by the government here. Beyond the incorrect date, the *Gonzales-Lerma*

information did not indicate the case number or county of conviction, or otherwise narrow down for the defendant where or when the alleged conviction occurred. *Id.* at 1485-86. In the case before us, the government not only gave the state, county, and case number, but attached a copy of the actual Suspension of Sentence form that served as the judgment for the September 6, 1991 conviction. As noted above, that form listed the name Jose Esteban Guerrero Rocha, the offense conspiracy to possess narcotic drugs, and the date September 6, 1991.[5] This was more than ample notice of the conviction on which the government intended to rely. Furthermore, the extensive argument during the sentencing proceedings regarding whether Guerrero was in fact the individual convicted of the September 6, 1991 conspiracy charge, including numerous exhibits, witnesses and cross-examinations, belies any claim that the misdated information denied Guerrero an opportunity to be heard.

Because the information provided Guerrero with notice of the government's intent and an opportunity to be heard, we agree with the government that the incorrect date is precisely the type of "clerical error" Congress allowed to be corrected "any time prior to the pronouncement of sentence." *See* 21 U.S.C. §

---

[5] The confusion seems to stem from the date stamp on the Suspension of Sentence form, which reads "SEP 09 '91."

-15-

851(a)(1); *Gonzales-Lerma*, 14 F.3d at 1486.  The government filed an amended information listing the correct date of the conviction prior to Guerrero's sentence.

The government's first information was timely served and filed and supplied Guerrero with notice of which convictions the government planned to rely on at his sentencing. The trial court also gave Guerrero ample opportunity to air his claim that he was not the individual convicted of that crime.  The government corrected the clerical error contained in the original information before Guerrero's sentence was pronounced.  Because these requirements of 21 U.S.C. § 851(a)(1) were met, the trial court did not exceed its jurisdiction in relying on the convictions listed in the amended information to enhance Guerrero's sentence.

### Conclusion

Our review of the trial transcript shows that the prosecutor's closing statements did not amount to clear error requiring a new trial.  We also hold that the government's enhancement information met the requirements of 21 U.S.C. § 851(a)(1), and the district court properly exercised its jurisdiction in relying on it when sentencing Guerrero.  Furthermore, the record shows that Guerrero's claims that the prosecution provided insufficient evidence to convict him of conspiracy or to support the district court's finding that he had been convicted of the

-16-

September 1991 cocaine charge are without merit.  The judgment of the district court is therefore AFFIRMED in its entirety.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge