**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**January 31, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

DEMARIO TERREL HARRIS,

        Defendant - Appellant.

No. 05-5229
(D.C. NO. 04-CR-160-JHP)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **SEYMOUR**, Circuit Judges and **ROBINSON**, District Judge.[**]

---

The jury convicted Defendant/Appellant Demario Terrel Harris of possession

with intent to distribute fifty grams or more of cocaine base in violation of 21 U.S.C. §§

841(a)(1) and 841(b)(1)(A), and being a felon in possession of a firearm in violation of

18 U.S.C. §§ 922(g)(1) and 924(a)(2).[1]  Before trial, the government had filed an

---

[*]This order and judgment is not binding precedent, except under the doctrine of law of the case, res judicata, and collateral estoppel.  The Court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]Honorable Julie A. Robinson, U.S. District Judge, District of Kansas, sitting by designation.

[1]      On Harris's motion, the district court dismissed Count 2, which charged possession of firearm in furtherance of drug trafficking crime, under Fed. R. Crim. P. 29.

Information under 21 U.S.C. § 851(a)(1) giving Harris notice of its intent to use his two prior felony convictions to enhance his sentence. The district court sentenced defendant to life imprisonment on Count 1 and 120 months on Count 3, to run concurrently with each other and consecutively to a state sentence. Harris appeals his conviction and sentence. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## I.    Evidence

Given that Harris challenges the sufficiency of the evidence on both counts of conviction, we summarize the evidence in the light most favorable to the government. On December 9, 2003, a state district court judge signed a search warrant captioned, "State of Oklahoma, County of Tulsa vs. John Doe B/M." The search warrant and supporting affidavit stated that there was probable cause to search a particular residence in Tulsa, based in part on evidence obtained from a confidential informant ("CI"). According to the affidavit, within seventy-two hours of applying for the warrant, Tulsa Police Department Officer Bill Yelton had met with a reliable CI who described the residence in the search warrant and told Officer Yelton that he had observed a black male selling cocaine and marijuana out of the residence, that was packaged for sale. The affidavit further stated that police surveillance of the residence had revealed short term traffic to and from the residence, including several black males.

Officer Yelton testified that he and other officers executed the search warrant at the address listed on the warrant on December 9, 2003 at about 8:30 p.m. Officer Yelton knocked and announced at the door and saw a female look out the window, but

no one answered the door. Officer Yelton then heard a sound like running footsteps inside the home, so the officers breached the front door. Once the front door was open, the officers saw Harris run to the far end of a hallway and throw a blue plastic bag into the southeast bedroom with his right hand. Harris then turned to face the police officers and obeyed their commands to turn around and crawl back toward the front room of the house, where he was taken into custody. The officers also secured the other individuals in the house: Kristie Jones, the owner of the residence; Tonia Henderson, a female they took into custody for outstanding misdemeanor warrants; a seventeen year-old male they took into custody; and two smaller children.

Officers then searched the home, beginning in the southeast bedroom where the officers had seen Harris throw the blue plastic bag. In that bedroom, officers found this bag, which was on top of a bed in plain view about three to four feet from the door. Inside this blue plastic bag was a clear plastic zip-lock gallon bag containing twenty-two smaller bags of crack cocaine and multiple bags of marijuana. While officers seized all the contents of the blue plastic bag, they did not seize the blue plastic bag itself. Officers also seized a loaded, nickel-plated .38 revolver they found underneath the bed in this same southeast bedroom. In addition, officers seized a small bag of marijuana and $220 they found on Harris's person, and a loaded blue steel .38 revolver inside the top dresser drawer, in the southwest bedroom.

At trial, Kristie Jones, Harris's cousin and the homeowner of the subject residence, testified for the government. Jones testified that she lived at the residence

with her three minor children and that she had allowed Harris to go to her home while she was at work to check on one of her sons, who had been suspended from school. Jones also testified that she had asked Harris to provide her with a revolver for her protection; and Jones identified the nickel-plated revolver seized from the southeast bedroom as similar to the one given to her by Harris sometime in late November or early December 2003. Jones further testified that Harris had given her ammunition for the gun and had loaded it for her.

Robert Yerton, a fingerprint examiner for the Tulsa Police Department, testified that he examined the weapons and plastic bags recovered during the search, finding no prints on the nickel-plated revolver, or the drug packaging. Yerton testified that he did find a latent print of Harris's left thumb on the blue steel revolver.

Sean Larkin, a Tulsa police officer, testified about two instances when he arrested Harris, which the trial court admitted as evidence under Fed. R. Evid. 404(b). Officer Larkin testified that on April 28, 1999, he made a traffic stop of a vehicle in which Harris was an occupant. At one point during this stop, Harris tried to run away, and when Officer Larkin asked him why, Harris answered that he had marijuana in his shoe. After Officer Larkin asked Harris to remove his shoes, he found one small plastic bag containing marijuana and one small plastic bag containing numerous tannish-colored rocks he suspected was crack cocaine. After he arrested Harris, Officer Larkin asked him if he was selling cocaine and Harris nodded his head indicating yes.

-4-

Officer Larkin further testified about an encounter with Harris on January 6, 2000. While on patrol, Officer Larkin and his partner observed Harris walking down the street. When Harris noticed the officers turn their vehicle around, he began running. Officer Larkin testified that he saw Harris pull a plastic bag out of his jacket pocket and throw it to the edge of the street while continuing to run. The officers stopped and detained him and recovered the bag, which contained a plastic sandwich bag containing marijuana and three or four empty bags. The officers also discovered $230 in Harris's wallet. Officer Larkin said Harris told him that he could not smoke marijuana because he was on probation but that he had bought an ounce to break up and sell.

## II. Sentencing

Because Harris objected to the validity of the two prior felony drug offenses identified in the government's Information filed before trial pursuant to 21 U.S.C. § 851, the district court conducted an evidentiary hearing to determine if Harris had been actually been convicted of these offenses. The government presented testimony by an Oklahoma probation and parole officer who had supervised Harris on the two Tulsa County cases, and testimony by Yerton, the fingerprint expert, that it was Harris who was convicted of those two prior felony drug offenses. The district court concluded that the government had established beyond a reasonable doubt that Harris had previously been convicted of these prior felony drug offenses and further that Harris was unable to establish that the convictions were invalid by a preponderance of the evidence. Therefore, the district court sentenced Harris on Count 1 to the statutory mandatory

sentence of life imprisonment under 21 U.S.C. § 841(b)(1)(A), and 120 months on Count 3, to run concurrently with each other and consecutively to Harris's state sentence.

## III. Discussion

Harris raises the following issues on appeal: (1) whether the district court erred in denying his motion to reveal the identity of the CI; (2) whether the district court erred in admitting evidence of other crimes over Harris's objection; (3) whether there was insufficient evidence to support the convictions; and (4) whether the district court erred in sentencing Harris to life imprisonment.

### A. Identity of the Confidential Informant

Prior to trial, Harris filed a motion to disclose the identity of the CI referenced in the search warrant. The magistrate judge issued a report and recommendation that ordered the government to produce the CI for an *in camera* examination by the court and to produce a copy of the CI's affidavit in support of the search warrant, and further allowing counsel to submit questions for the CI, for the court's consideration beforehand. The government appealed and the district court vacated the magistrate judge's order. The district court found that Harris's motion to disclose the identity of the CI was "nothing more than a fishing expedition and that disclosure of a confidential informant on such a minimal showing would thwart the public's interest in effective law enforcement while adding nothing to the defendant's defense in this case."

Harris argues that the district court erred in denying his motion to disclose the identity of the CI. Because the caption of the warrant referenced "John Doe B/M," Harris contended that he should have been able to at least obtain a physical description of the person the CI claimed to have seen distributing the drugs from the residence. The Court reviews the district court's exclusion of evidence for an abuse of discretion. *United States v. Mathis*, 357 F.3d 1200, 1208 (10th Cir. 2004) (citing *United States v. Davis*, 40 F.3d 1069, 1073 (10th Cir. 1994); *United States v. Bowser*, 941 F.2d 1019, 1021 (10th Cir. 1991)).

The Supreme Court has stated that "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of the accused, or is essential to a fair determination of a cause, the privilege must give way." *Roviaro v. United States*, 353 U.S. 53, 60–61, 77 S. Ct. 623, 628, 1 L. Ed. 2d 639 (1957). But "'[m]ere speculation about the usefulness of an informant's testimony is not sufficient to warrant disclosure.'" *United States v. Brantley*, 986 F.2d 379, 383 (10th Cir. 1993) (quoting *United States v. Scafe*, 822 F.2d 928, 933 (10th Cir. 1987)).

The affidavit in support of search warrant for Kristie Jones' residence states that Officer Yelton met with a reliable CI within seventy-two hours of applying for the warrant. Officer Yelton explained that the CI had been to the residence and had observed a black male selling cocaine and marijuana out of the residence. The affidavit states that the CI directed Officer Yelton to the residence and identified it as the same residence where he saw a black male conduct drug transactions. The affidavit further

-7-

states that police surveillance revealed short term traffic to and from the residence, including several black males. The warrant was based upon information provided by this CI, which established probable cause particular to the Jones' residence, not particular to Harris. Furthermore, because the CI was not present during the execution of the warrant and because his tip was not to a person, but instead to a particular residence, neither the CI's identity nor his description of the black male he saw at that residence would be relevant to Harris's case.

Further, the CI was not a participant or a witness to the crime. *See Brantley*, 986 F.2d at 383 (collecting Tenth Circuit cases holding that the identity of an informant need not be disclosed when the informant was neither a participant nor a witness to the crime). Therefore, the district court did not abuse its discretion when it vacated the magistrate judge's report and recommendation that allowed for *in camera* examination of the CI.

### B. 404(b) Evidence

Harris challenges the district court's admission of evidence of his prior arrests for drug crimes under Fed. R. Evid. 404(b). Harris argues that evidence of these crimes was more prejudicial than probative and should have been excluded. We review a district court's evidentiary rulings for an abuse of discretion. *United States v. Cherry*, 433 F.3d 689, 700 (10th Cir. 2005), *cert. denied*, 126 S. Ct. 1930, 164 L. Ed. 2d 679 (2006).

Evidence of a defendant's prior crimes or acts may be admissible to show proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). This evidence is admissible if: (1) it is offered for a proper purpose; (2) it is relevant; (3) the probative value of the evidence is not substantially outweighed by its potential for unfair prejudice; and (4) the court, upon request, instructs jurors to consider the evidence only for the purpose for which it was admitted. *Cherry*, 433 F.3d at 700–01; *United States v. Brooks*, 161 F.3d 1240, 1243 (10th Cir. 1998).

Here, the evidence was offered for a proper purpose—to establish Harris's intent, knowledge, and lack of mistake. Further, as the district court held, the evidence was relevant to prove the elements of the crimes charged. Harris denied that he intended to distribute the crack cocaine found in the southeast bedroom of the Jones' residence. Harris also denied knowledge of the contents of the bag. Both prior arrests described by Officer Larkin involved Harris possessing controlled substances that he intended to distribute. In the April 1999 arrest, Harris possessed multiple bags of crack cocaine, packaged for individual sale. In the January 2000 arrest, Harris possessed a large bag of marijuana, along with multiple small bags, that he told Officer Larkin he intended to break up and sell. The district court properly found this evidence is relevant to prove that Harris had an intent to distribute.

The district court also weighed the probative value and prejudicial impact of this evidence under Fed. R. Evid. 403 and concluded that the evidence was more probative

than prejudicial. "We afford district courts 'broad discretion in making rulings under Rule 403.'" *Cherry*, 433 F.3d at 702 (quoting *United States v. Ramirez*, 63 F.3d 937, 943 (10th Cir. 1995)). Harris maintains that the prejudicial impact of the evidence outweighed the probative value given the "detail" provided about the prior arrests, "including the officer's opinions and other unrelated matters." But Harris fails to point this Court to any particular detail or opinion included in Officer Larkin's testimony that rendered the district court's ruling an abuse of discretion. Further, the district court was mindful of these concerns; in overruling Harris's objection to the 404(b) evidence, the district court stated that the government "should carefully select the witnesses it calls at the trial herein in such a way that considerations of undue delay, waste of time or needless presentation of cumulative evidence does not occur."

The district court also properly read a limiting instruction to the jury, cautioning them that the evidence of Harris's other crimes was admitted for the "limited purpose of establishing the defendant's knowledge, intent, and motive, if any, of the specific offense charged in the Indictment," and that they "may not be considered . . . as proof that the defendant is guilty of the specific offense charged." Harris fails to show that the district court abused its discretion in admitting Officer Larkin's testimony about his prior drug crimes under Rule 404(b).

## C. Sufficiency of the Evidence

Harris argues that the evidence presented at trial was insufficient to support his convictions for possession with intent to distribute cocaine base and for possession of a

-10-

firearm. Sufficiency of the evidence is a question of law that we review *de novo*, asking "'whether taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find the defendant [ ] guilty beyond a reasonable doubt.'" *United States v. Chavis*, 461 F.3d 1201, 1207 (10th Cir. 2006) (quoting *United States v. Platte*, 401 F.3d 1176, 1180 (10th Cir. 2005)).

### 1. Count 1: Possession with Intent to Distribute

To sustain a conviction for possession with intent to distribute, the government must prove beyond a reasonable doubt that the defendant: (1) possessed the controlled substance; (2) knew that he possessed the controlled substance; and (3) intended to distribute the controlled substance. *See, e.g.*, *United States v. Montgomery*, 468 F.3d 715, 719 (10th Cir. 2006); *United States v. Montelongo*, 420 F.3d 1169, 1173 (10th Cir. 2005). Harris argues that there was insufficient evidence to support the possession or intent to distribute elements because Jones's son's fingerprints could have been on the blue plastic bag that police failed to test. But even if another person's fingerprints were found on the blue plastic bag, that would not necessarily have refuted other evidence that Harris possessed the bag. Possession can be sole or joint. *United States v. Zink*, 612 F.2d 511 (10th Cir. 1980).

Possession of the controlled substance can be actual or constructive. *Montgomery*, 468 F.3d at 719 (citing *United States v. McKissick*, 204 F.3d 1282, 1291 (10th Cir. 2000)). The Court concludes that the government presented sufficient

-11-

evidence to establish that Harris had actual possession of the crack cocaine found in the Jones' residence. The officers saw Harris holding a blue plastic bag when they first entered the Jones' residence and witnessed him throw the bag into the southeast bedroom. Viewed in the light most favorable to the government, a jury could have found Harris guilty beyond a reasonable doubt on Count 1 on a theory of actual possession.

To the extent that Harris challenges the jury's finding of his intent to distribute, the government also presented sufficient evidence to support this element. Even if a fingerprint test of the bag would have promoted Harris's theory that he was merely hiding the bag, a jury could rationally infer that this constituted evidence that Harris had knowledge of the bag's contents. That bag contained a large ziplock bag full of individually-packaged bags of crack cocaine. And a "'jury may infer intent to distribute from the possession of large quantities of drugs.'" *Id.* (quoting *United States v. Pulido-Jacobo*, 377 F.3d 1124, 1131 (10th Cir. 2004)). Likewise, the manner of packaging may prove defendant possessed of drugs with intent to distribute. *United States v. Allen*, 235 F.3d 482, 492 (10th Cir. 2000).

Moreover, the 404(b) evidence established intent to distribute. "This Court has repeatedly held that evidence of past crimes is admissible to establish specific intent, including intent to distribute in a drug trafficking offense." *United States v. Cherry*, 433 F.3d 698, 701 (10th Cir. 2005) (collecting cases). Officer Larkin's testimony of other drug distribution crimes supports the elements of knowledge and intent. Given Harris's

-12-

past crimes involving drug distribution, a reasonable jury could have found Harris had knowledge of the contents of the plastic bag and had the requisite intent to distribute them.

### 2. Count 3: Felon in Possession

Count 3 charges Harris as a felon in possession of a firearm under 18 U.S.C. §§ 922(g)(1) and 924(a)(2). To sustain a conviction on this count, the government must prove beyond a reasonable doubt that the defendant (1) was convicted of a crime punishable by imprisonment exceeding one year; (2) thereafter knowingly possessed a firearm and/or ammunition; and (3) the possession was in or affecting interstate commerce. *See, e.g.*, *United States v. Heckard*, 238 F.3d 1222, 1228 (10th Cir. 2001); *United States v. Wilson*, 107 F.3d 774, 779 (10th Cir. 1997). Harris stipulated that he had a prior felony conviction. On appeal, Harris challenges the sufficiency of the evidence that he "knowingly possessed" a firearm.

Harris suggests that the government was required to prove that Harris actually possessed one of the firearms seized from the Jones' residence on the date specified in the Indictment, December 9, 2003. But, to prove that Harris illegally possessed a firearm on this count, the government may show either actual, knowing possession or constructive possession of a firearm. *United States v. Norman*, 388 F.3d 1337, 1340–41 (10th Cir. 2004). Jones testified that Harris had given her the gun seized from the southeast bedroom in late-November or early-December 2003. The Indictment only alleges an "on or about" date of December 9, 2003. When an indictment uses "on or

-13-

about" terminology, "proof of date reasonably near to the specified date is sufficient." *United States v. Castillo*, 140 F.3d 874, 885 (10th Cir. 1998). Also, Yerton testified that Harris's latent thumbprint was found on the firearm seized from the southwest bedroom. This evidence could lead a reasonable jury to conclude that Harris had actual, knowing possession of at least one of the two firearms seized from the Jones' residence reasonably near the date of December 9, 2003.

### D. Sentencing

Harris is subject to a mandatory term of life imprisonment on Count 1 for violating § 841(a)(1) because the conviction involved fifty grams or more of cocaine base and because the court found that he had "two or more prior convictions for a felony drug offense" that had become final. *See* 21 U.S.C. § 841(b)(1)(A). Pursuant to § 851(a)(1), the government filed an Information, notifying Harris of the prior convictions it would rely upon in seeking an enhanced term of life imprisonment. The Information lists a September 2, 1999 conviction in the district court of Tulsa County, Oklahoma for unlawful possession of a controlled drug with the intent to distribute and a March 1, 2001 conviction in the district court of Tulsa County, Oklahoma for unlawful possession of marijuana with the intent to distribute. The government alleged that both convictions were for felony offenses, and that both were final judgments. Pursuant to § 851(c), Harris filed a written response to the information, and stated that at least one of the convictions was invalid because it was obtained in violation of the Constitution.

-14-

21 U.S.C. § 851(c)(1) provides that the United States Attorney has the burden of proof beyond a reasonable doubt on any issue of fact that could except a defendant from an enhanced sentence. However, when a person claims that a conviction alleged in an information was obtained in violation of the Constitution, that person has the burden of proof by a preponderance of the evidence on any issue of fact raised in that response. 21 U.S.C. § 851(c)(2).

Harris contends that the evidence presented at the evidentiary hearing did not prove beyond a reasonable doubt that he was convicted of both prior felony offenses referenced in the Information. The Court reviews *de novo* "the legal question of whether a rational trier of fact could find the evidence was sufficient beyond a reasonable doubt, viewing the evidence in the light most favorable to the government." *United States v. Green*, 175 F.3d 822, 834 (10th Cir. 1999). Proof beyond a reasonable doubt is "'proof that leaves you firmly convinced of the defendant's guilt,'" *id.* (quoting Fed. Jud. Ctr. Pattern Criminal Jury Instructions 28–29 (1988)), and "convey[s] 'the very high level of probability [of guilt] required by the Constitution in criminal cases." *Id.* (quoting *Victor v. Nebraska*, 511 U.S. 1, 14, 114 S. Ct. 1239, 1239, 127 L. Ed. 2d 583 (1994)).

Initially, Harris points to a discrepancy between the social security numbers on the two Judgment and Sentence forms used in the Tulsa County district court cases, which the government characterizes as typographical error. Despite the discrepancy, the government introduced evidence that could establish beyond a reasonable doubt that it

was Harris who had been convicted of these felony drug offenses. Harris's probation and parole officer, Paul Lloyd, testified that he had supervised Harris in connection with both prior convictions alleged in the Information. Also, the government introduced a "Pen Pack" for Harris, which was prepared by Lloyd and contained copies of certified judgments, fingerprints, and parole documents. Aside from the social security number referenced in the caption of the Judgment and Sentence for the 1999 conviction, the documents in the Pen Pack consistently refer to the same social security number(s) throughout.[2] Moreover, the government produced evidence that the 1999 sentence had been modified to a fifty-six month suspended sentence. Upon Harris's conviction in 2001, the suspended sentence he had received in the 1999 case was revoked, and ordered to run concurrently with the six-year sentence he received on the 2001 conviction.

Harris argues that the lack of testimony that his fingerprints matched cards for both prior convictions and the current offense raised a reasonable doubt about whether it was he who was convicted of those prior convictions. But the government offered the testimony of Yerton, a fingerprint expert, who compared four documents that each contained at least one known fingerprint belonging to defendant with the fingerprints in the Pen Pack. Yerton concluded that the prints were all made by the same individual. Additionally, Yerton testified that the prints found on the barrel of the firearm discovered in this case match the prints on the four previously mentioned documents

---

[2]     The documents contained in the Pen Pack repeatedly refer to identification data, including two different social security numbers, aliases and tattoos.

and the Pen Pack. Yerton stated at the hearing: "The known impression of the known fingerprint card used previously earlier this year and the known impressions present here were all made by one and the same individual." R. Vol. V at 23.

Finally, Harris contends that the plea form for the 1999 case failed to provide a sufficient factual basis for the element requiring an intent to distribute, but only states that he possessed marijuana. Harris appears to suggest that the government must show that the prior conviction was for a "serious drug offense" in order to apply the § 841(b)(1)(A) enhancement. Yet, the language of the statute only requires "two or more prior convictions for a *felony drug offense*," 21 U.S.C. § 841(b)(1)(A) (emphasis added), meaning a drug offense subject to a term of over one year imprisonment. 21 U.S.C. § 802(44).

Harris points the Court to the holding in *Shepard v. United States*, 544 U.S. 13, 125 S. Ct. 1254, 161 L. Ed. 2d 205 (2005), for the proposition that the determination of whether convictions qualify as "serious drug offenses" for sentencing enhancement purposes should be proven to a jury beyond a reasonable doubt. But this Court has explained that *Shepard* involved "an entirely different question: what evidence could be used to show that a plea of guilty to burglary defined by a nongeneric burglary statute 'necessarily admitted elements of the generic offense.'" *United States v. Zuniga-Chavez*, 464 F.3d 1199, 1204 (10th Cir. 2006) (quoting *Shepard*, 544 U.S. at 26, 125 S. Ct. at 1254) Viewing the evidence in the light most favorable to the government, a reasonable factfinder could find evidence of Harris's convictions beyond a reasonable

doubt, and Harris points to no evidence that could establish by a preponderance of the evidence that either conviction was obtained in violation of the Constitution.

Harris also argues that his Sixth Amendment rights were violated by not having his prior convictions proven to a jury beyond a reasonable doubt. But we have held that "the government need not charge the 'fact' of a prior conviction in an indictment and submit it to a jury." *United States v. Moore*, 401 F.3d 1220, 1224 (10th Cir. 2005). Thus, we reject Harris's argument that his Sixth Amendment rights were violated because a jury did not decide the validity of his prior convictions.

## IV. Conclusion

The district court did not err when it vacated the magistrate judge's report and recommendation allowing for *in camera* questioning of the CI in this case; nor did the district court err in admitting evidence of Harris's past drug activity under Fed. R. Evid. 404(b). Further, the government presented sufficient evidence to convict Harris on Counts 1 and 3, and to enhance his sentence based on his two prior felony drug offenses. Finally, there was no Sixth Amendment violation for failure to allow a jury to determine Harris's prior convictions beyond a reasonable doubt. We therefore affirm.

There is one pending motion remaining: Appellee's Motion to Seal Appellee's Addendum of Exhibits to Brief. The Court grants this unopposed motion.

Entered for the Court

Julie A. Robinson
District Judge

-18-